MacLAUGHLIN et al. v. UNION SWITCH & SIGNAL CO.

BORLAND et al. v. WESTINGHOUSE AIRBRAKE CO.

No. 9478, 9479.

Circuit Court of Appeals, Third Circuit.
Argued Dec. 16, 1947.
Decided Feb. 9, 1948.

Before BIGGS, GOODRICH, and O'-CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

The instant appeals raise questions concerning Section 8 of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 308, as applied to vacation provisions of certain union contracts. Pertinent portions of the statute are set forth in the footnote below.[1]

Sylvan Libson, of Pittsburgh, Pa., for appellants.

Donald W. Ebbert, of Pittsburgh, Pa. (Earl F. Reed, Joseph E. Madva, and Thorp, Bostwick, Reed & Armstrong, all of Pittsburgh, Pa., on the brief), for appellees.

Plaintiffs are members of Local 610, United Electrical, Radio and Machine Workers of America. In 1942, 1943, and 1946, the union negotiated with the defendant companies labor agreements, all of which agreements included vacation provisions.[2] Both plaintiffs and defendants have

[1] "§ 308. Service and health certificates; employment and re-employment provisions; voting during service.

\* \* \* \* \*

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, \* \* \*

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so.

\* \* \* \* \*

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces.

\* \* \* \* \*

"(e) In case any private employer fails or refuses to comply with the provisions of subsection (b) or subsection (c), the district court \* \* \* shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, to specifically require

such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. \* \* \* "
50 U.S.C.A.Appendix, § 308.

[2] Article VII of the 1942 contracts of both companies reads as follows:

"Vacations.

"Section 1. Eligibility for vacation with pay shall be based on the total service with the Company to December 31 of the preceding calendar year, excluding any service prior to a quit or discharge. Vacations can be taken only during the calendar year in which allowed.

"Section 2. Employees with more than one (1) and less than five (5) years' service shall be allowed a vacation of one (1) week, and employees with five (5) years' or more service shall be allowed a vacation of two (2) weeks.

"Section 3. The vacation pay for each week of vacation shall be computed by multiplying the average weekly hours worked by all employees in the preceding calendar year by the individual's average earned rate per hour in the preceding calendar year.

"Section 4. Employees with less than one year's service shall be allowed a vacation of one (1) day for each three (3) months' service, with vacation pay computed on the basis of one-fifth of one week's vacation pay for each day of vacation.

"Section 5. The provisions of this Article shall be retroactive to April 1, 1942."

Article VII of the 1943 and 1946 contracts of both companies states:

taken the position that the 1943 and 1946 vacation provisions effected no material change from those in the 1942 contracts.

The claim of plaintiff Borland may be analyzed as representative of those here being adjudicated. An employee of The Westinghouse Airbrake Company for more than five years) he was inducted[3] into the armed forces on October 3, 1942, was honorably discharged on October 8, 1945, and resumed active work for Westinghouse on October 18, 1945. It is his contention that he is entitled to vacation pay (a) not only for the work he performed for Westinghouse in 1942 (for which, had 'he not been inducted, he would have been paid in 1943), (b) but also in 1945, the year of his return, for the year 1944 (during all of which year he was in military service). Defendants contend, on the other hand, that vacation pay is not due him for either year in question. The court below, in granting defendants' motion to dismiss the complaints, adopted defendants' views.[4]

It is doubtless true that a reason for the inclusion of vacation provisions in employment contracts is to afford the opportunity for rest and relaxation. Such provisions, however, perform a second function as well.[5] In Re Public Ledger, 3 Cir., 1947, 161 F.2d 762, 768, we quoted and adopted the statement of the United States Circuit Court of Appeals for the Second Circuit, In re Wil-Low Cafeterias Inc., 111 F.2d 429, that "a vacation with pay is in effect additional wages." Vacation advantages accorded employees are certainly no less to be prized than such benefits as pensions, bonuses, and participation in insurance programs; and the Congressional history of the Selective Training and Service Act of 1940 makes it clear that the statute was intended to protect these other rights.[6]

In view of these considerations, we can see no reason why the protection of the Selective Training and Service Act of 1940 in appropriate cases should not embrace those who enlisted and those who were drafted into the armed forces.

"Vacations.

"Section 1. Employees on the Company's roll during the current calendar year are eligible for vacation with pay based on their total service with the Company to and including December 31 of the preceding calendar year, excluding any service prior to a quit or discharge.

"Section 2. Employees with one (1) or more, but less than five (5) years' service shall be allowed a vacation of one (1) week, and employees with five (5) years' or more service shall be allowed a vacation of two (2) weeks.

"Section 3. The vacation pay for each week of vacation shall be computed by multiplying the average weekly hours worked by all employees in the preceding calendar year by the individual's average earned rate per hour in the preceding calendar year.

"Section 4. Employees with less than one (1) year's service shall be allowed a vacation of one (1) day for each three (3) months' service, with vacation pay computed on the basis of one-fifth of one (1) week's vacation pay for each day of vacation.

"Section 5. Vacations can be taken only during the current calendar year."

[3] For the purposes of this opinion, "induction" will be used to include both

[4] It is from the order dismissing the complaints that the instant appeal is taken. Subsequent to the entry of that order, plaintiffs moved to vacate the order of dismissal and for leave to file an amended complaint. The motion was refused in an order accompanied by a second opinion assigning further reasons for dismissal of the complaint.

[5] That rehabilitation was the sole motive for the contract provisions under consideration appears dubious when it is noted that the length of vacation depended upon the number of years of service with defendants.

[6] The insurance benefit is specifically mentioned in subsections (c) and (d) of Section 8.

A typical Congressional comment is that of Senator Sheppard, one of the principal proponents of the bill, who said:

"Section 8 attempts to offer a trainee or Reserve Officer on active duty as much protection with respect to reemployment and retention of employment benefits as is within reasonable bounds. It attempts to prevent loss of seniority, accrued employment benefits, including participation in insurance, pension, bonus, and other beneficial programs." 86 Cong.Rec. page 10095.

vacation rights which the employee has earned and would have received as a matter of course but for his induction. As was explained in Trailmobile Co. v. Whirls, 1947, 331 U.S. 40, at page 58, 67 S.Ct. 982, at page 991, the statute contemplated that the veteran "was to be restored and kept, for the year at least, in the same situation as if he had not gone to war but had remained continuously employed or had been 'on furlough or leave of absence.'" It would require a strained interpretation of the statute not to place veterans in pari passu with non-veteran employees as to vacation rights, if such rights are due the veteran under the contract.[7]

Bearing in mind, therefore, that the statute was intended to place veterans on the precise point of the vacation escalator which they would have occupied had they kept their positions continuously during the war, we shall examine the contractual provisions.

It must be noted at the outset that we are adjudicating only the question of vacation rights granted under specific contracts. The contracts before us have a special feature. Rather than grant to each employee privileges measured by the work he and he alone has actually performed for the company, the contracts provide for payment based upon "the average weekly hours worked by all employees in the preceding calendar year." Obviously the contracts contemplated the contribution by the employee in some degree to the hourly work total from which the "average weekly hours" is to be computed; and it is no less inferable that uneven contributions to the hourly work total were to be expected.

The principal reasons assigned by the court below for dismissing the instant complaints apparently were (a) that the contracts established the rule that, to be eligible for vacation privileges, an employee had to be in the active service of the company on December 31 of the previous year, and that plaintiffs have not alleged established rules or practices to the contrary; (b) that, as to the work performed for the company in the year of induction, the veteran lost any vacation rights he might conceivably have had, because the contracts specified that vacation rights could be taken only during the subsequent calendar year, at which time the veteran (being in armed service) was not in a position to claim those rights; and (c) that, as to the year of return, the veteran could have no right to vacation privileges earned in the preceding calendar year, in that his "average earned rate per hour in the preceding calendar year" was zero.

We cannot agree with the court below that it was incumbent upon plaintiffs to allege affirmatively in the complaints that the established rules and practices of defendants did not require active employment by defendants on December 31. In fact, plaintiffs did attempt, in their motion for leave to file an amended complaint, to allege that the established practice of defendants was other than that indicated in the opinion of the court below. Under the provisions of the Federal Rules of Civil Procedure, particularly Rule 12(e), 28 U.S.C.A. following section 723c, any doubt which might have existed in the matter could have been cured, rather than to determine as a matter of law, on a motion to dismiss, that the contract provisions definitely required active employment by defendants on December 31. As we interpret the contracts, however, a contrary conclusion seems warranted. We fail to find any basis therein for holding that December 31 should be given the status of a magic day which would defeat the right of one who is still an employee and who has rendered faithful service throughout the year except for that day. Section 1 of the contracts, which bases eligibility upon *total* service, seems to us motivated primarily, if not en-

---

[7] Defendants suggest that Congress recognized a cessation of the employer-employee relationship while the veteran was serving with the colors. In support of this contention, defendants have stressed the statutory words "reëmployment" and "leaves a position." The extracts from Senator Sheppard's speech and the Trailmobile case which we have quoted, however, conclusively demonstrate that the relationship continued. See also Fishgold v. Sullivan Dry Dock & Repair Corp., 1946, 328 U.S. 275, 287, 288, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, and comments of Representative May, 86 Cong.Rec. page 11702.

tirely, by the purpose of setting forth the standard for determining whether an employee is to receive two weeks of vacation, one week of vacation, or less than one week of vacation under Sections 2 and 4 of the contracts. Read in its context, the December 31 phrase of Section 1 cannot be so expanded as to become the deciding factor in determining whether an employee is or is not eligible for any vacation privileges. In this connection, it is not inapposite to note that the words "to and including" of Section 1 of the 1943 and 1946 contracts, becomes lifeless if December 31 alone is to be the test of eligibility. We believe that a reasonable interpretation virtually requires the conclusion that December 31 was merely the terminal date stipulated for the computation of vacation rights.

■ Likewise, we reach a conclusion different from that of the court below, on the question whether it was of the essence that under the contracts, a veteran such as Borland, for example, could enjoy in 1943, if at all, any vacation rights he may have earned in 1942. The Selective Training and Service Act of 1940 was the law of the land when all contracts here in question were negotiated. Assuredly, these contracts were not intended to extend an empty right to those employees who answered the call to the colors. More logical, and more in keeping with the pronouncements in Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, and Trailmobile Co. v. Whirls, supra, is it to interpret these contracts as providing that, in the event of induction or enlistment, the veteran would be entitled to claim those vacation rights, which he had earned in his last year of service with the company, at the time when he resumed that service. In other words, we interpret the contracts in the light of the statute to provide that, for the purpose of receiving vacation privileges accrued in active service with the company, the law tolled the running of the calendar year so as to keep the veteran "in the same situation as if he had not gone to war." The year of return, then, for this purpose alone, becomes, under the 1942 contract provisions, the "calendar year in which allowed" and, under the 1943 and 1946 contract provisions, the "current calendar year."

Consequently, the vacation pay claim of each plaintiff would mature and become payable upon his timely resumption of active employment by the company, and would be computed in accordance with the contract provisions by multiplying his average earned rate per hour in the year of induction by the average weekly hours worked by all employees (including plaintiff) in that year.

■ This conclusion eliminates any claim to vacation rights for the calendar year preceding the year of return. The contracts make it indelibly clear that vacation rights were gauged by work actually performed for defendants. No provision is found in the contracts upon the basis of which this claim could be calculated. Plaintiffs suggest that "substantial compliance" with the contractual provisions could be attained by using "the veteran's average hourly earned rate in the last year he worked, plus all general wage increases in intervening years." To adopt this method would require us to substitute standards of computation different from those specified in the contract, a result which would do violence to both the letter and spirit of the contracts.

For the reasons stated, the order of the district court will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.