MAGMA COPPER COMPANY, SAN MANUEL DIVISION, a corporation, Appellant,

v.

Stephen R. EAGAR, Ray F. Stephens, James V. Mork, and Levi D. Jaramillo, Appellees.

No. 19777.

United States Court of Appeals Ninth Circuit.

Jan. 31, 1966.

Rehearing Denied May 31, 1967.

---

Ralph B. Sievwright, Twitty, Sievwright & Mills, Phoenix, Ariz., for appellant.

JoAnn D. Diamos, U. S. Atty., William J. Knudsen, Jr., Asst. U. S. Atty., Phoenix, Ariz., John W. Douglas, Asst. Atty. Gen., Morton Hollander, Atty., Edward Berlin, Atty., Civ. Div., Dept. of Justice, Washington, D. C., for appellee.

Before CHAMBERS, Chief Circuit Judge, MADDEN, Judge of the Court of Claims, and KOELSCH, Circuit Judge.

KOELSCH, Circuit Judge.

Invoking Section 9 of the Universal Military Training and Service Act of 1948, 50 U.S.C. War App., § 459, plaintiffs brought this suit against the Magma Copper Company to recover holiday and vacation pay which they assert is due them.

Magma's employees were entitled to such pay under a series of contracts entered into between Magma and International Union of Mine, Mill & Smelter Workers, which represented the employees. The following provisions are pertinent to this case:

"9–8 *Vacations* B. Requirements to qualify. An employee who has been continuously employed by the Company for at least one (1) year immediately preceding the date of his application for vacation and who has not had a vacation within

said year and who has worked at least 75% of his available shifts within said year and who is an employee of the company on the day his vacation commences shall be entitled to a vacation with pay as hereinafter set forth.

\* \* \* \* \* \*

E. \* \* \* (7) Any employee leaving the service of the Company for any reason (except lay off due to reduction of work force) before his annual determinative date shall not be entitled to a vacation or vacation pay in lieu thereof \* \* \*."

*"12–2 Holiday Pay.* A. Employees covered by this Agreement shall be paid the straight time rate, exclusive of shift differential, for the named holidays when not worked, subject to the following terms and conditions:

\* \* \* \* \* \*

ii. An employee must have been on the Company's payroll continuously for three (3) months prior to the holiday in question."[1]

Plaintiffs were all employees of Magma immediately before entering into the armed services of the United States. Following their satisfactory completion of service they were restored to proper positions by Magma. The several claims they asserted were virtually the same; the facts were all stipulated and the issues purely legal ones. Those relating to the claim of Stephen R. Eagar are fairly representative. Eagar was continuously employed by Magma from March 12, 1958 until March 6, 1959, when he entered into military service. By the latter date he had already worked in excess of 75% of the shifts available in his vacation earning year (i.e., March 12, 1958 to March 12, 1959). Following his return on May 2, 1962 he worked the last scheduled shift prior to and the first scheduled shift after the Memorial Day and Independence Day holidays. Magma

refused his demand for vacation pay for the year commencing March 12, 1958 and for holiday pay for the two mentioned holidays. The grounds for refusal were that (a) as to vacation pay, he was not in the service of the Company at the end of his vacation earning year as required by the contract and (b) as to holiday pay, that he had not been on the Company payroll for the required period prior to either holiday.

The district court, however, rejected Magma's contentions and entered judgment for the plaintiffs. Magma has appealed.

■ The proposition is well established that present Section 9(b) B(i) of the Act [50 U.S.C. App. § 459(b) B(i)] which requires the employer to restore a returning veteran to a position of like "seniority status and pay," means that "[h]e (the veteran) shall be 'restored without loss of seniority' and be considered 'as having been on furlough or leave of absence' during the period of his service for his country, with all of the insurance and other benefits accruing to employees on furlough or leave of absence. § 8(c). Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." Fishgold v. Sullivan Drydock & Repair, 328 U.S. 275, 284–285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946).

In every instance where the issue has been presented, the courts have consistently held that the statute treats of two types of benefits: (a) "seniority, status and pay" and (b) "insurance and other benefits"; that "seniority" includes rights which automatically accrue as a direct incident of length of job tenure— "a prerequisite of seniority" [Siaskiewicz v. General Electric Co., 166 F.2d 463, 466 (2d Cir. 1948)]; that "other benefits" cover "a fairly narrow group of economic advantages whose common

---

[1] The quoted provisions taken from the 1962 Labor Agreement are common to the various labor agreements in effect throughout the periods under consideration.

quality [is] that they [are] miscellaneous fringe benefits not usually regarded as part of 'pay,' 'status,' or 'seniority'" [Borges v. Art Steel Co., 246 F.2d 735 (2d Cir. 1957)]; and that although "seniority" rights cannot lawfully be denied or diminished, the enjoyment of "other benefits" is governed by established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person (i. e., the veteran) was inducted. Siaskiewicz v. General Electric Co., supra; Borges v. Art Steel Co., supra; Dougherty v. General Motors, 176 F.2d 561 (3d Cir. 1949). See also Dwyer v. Crosby Co., 167 F.2d 567 (2d Cir. 1948). They have said, to quote from *Borges*, that "Vacation pay is of this fringe character, and we have previously refused to let returning veterans collect it if non-veterans on leave of absence do not get it." Speaking of the *Siaskiewicz, Borges* and *Dougherty* cases, appellees label them "plainly inapplicable" and incorrectly decided. They argue that "were it not for the interruption for military service, each of the appellees would, by the mere passage of time, have received the vacation and holiday benefits claimed." This, of course is a completely erroneous assumption which ignores the language of the statute and flies directly in the face of the express eligibility provisions of the labor agreements.[2]

■ In sum, we are in accord with the following quotation from the *Siaskiewicz* case:

"Since vacation rights are not pay unless they are for work actually done, and since they are not merely a perquisite of seniority, they must fall under the heading of 'other benefits.' Hence, under the language of the Act, appell[ees] must be treated like non-veteran employees on furlough or leave of absence. But non-veteran employees of [Magma] who were on leave of absence * * would not be entitled to vacation pay for that year. Therefore, appell[ees] are not so entitled. To grant them such pay would be to discriminate in favor of them as veterans, and against non-veteran employees."

This same rationale dictates the same conclusion with respect to the claims for holiday pay.

The judgment of the district court is reversed and the action is dismissed. No costs are allowed.

### ORDER ON PETITION FOR REHEARING

PER CURIAM.

In a petition for rehearing, appellees contend that our decision is contrary to the law as announced in Accardi v. The Pennsylvania R. R. Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966). We perceive no conflict.

■ What the Court said in *Accardi* regarding the policy of the Act was in the context of claims under Sec. 9(b) (B); the so-called "seniority" provision. It is of course well settled that a veteran's seniority is not impaired by reason of his military service, but to the contrary "automatically accrues" despite such service. Accordingly, he is "treated as though he had been continuously

---

2. In 1948 Congress amended Section 9(c) by the addition of "Section (2)" which reads:

"It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) (of this section) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

It would appear that the amendment did no more than reflect Congressional approval of the Supreme Court's prior decisions construing the statutory language relating to the returned veteran's rights to seniority, status, and pay. Tilton v. Missouri R.R. Co., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964). None of those decisions dealt with fringe benefits.

employed during the period spent in the armed forces." *Accardi*, p. 228, 86 S.Ct. p. 771. The Court did not have before it a "fringe benefit" type of claim such as those involved in this case and neither said nor intimated that such claims should be classified as Sec. 9(b) type claims or treated like them.

The petition for rehearing is denied.

MADDEN, Judge (dissenting):

I would grant the appellees' petition for rehearing. This court's decision was announced on January 31, 1966. On February 28, 1966, the Supreme Court of the United States decided the case of Accardi et al. v. Pennsylvania Railroad Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed. 2d 717. In that case the Court of Appeals had decided that the severance pay there involved did not concern "seniority, status, and pay" within the meaning of §§ 8(b) (B) and 8(c) of the Selective Training and Service Act of 1940; that it was a "fringe benefit" and subject to whatever contractual provisions the employer had made with the union which was the bargaining agent for the employees. The Supreme Court said, in Accardi, pp. 229–230, 86 S.Ct. p. 771.

> As we said in Fishgold v. Sullivan Corp. [328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230], supra, "[N]o practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." At 285 [66 S.Ct. at 1111]. The term seniority is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress as expressed in the 1940 Act. That intention was to preserve for the returning veterans the rights and benefits which would have automatically accured to them had they remained in private employment rather than responding to the call of their country. In this case there can be no doubt that the amounts of the severance payments were based primarily on the employees' length of service with the railroad.

In our instant case, two of the employees had worked for almost a year, one lacking only seven days of the year necessary, under the union contract, to earn a paid vacation. Their work was interrupted, thus short of the necessary year, by their entrance into military service. The Supreme Court's language in Accardi, quoted above, fits their situations exactly. The rights and benefits (paid vacations) which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country are the rights and benefits here at issue.

Three of the employees here involved worked both before and after several holidays. But their work after the holidays was not sufficiently soon after the holidays to entitle them, under the contract, to pay for the holidays. The reason why they were not at work immediately after the holidays was that they were then in the military service. The Supreme Court's language in Accardi applies to their situation.

I gather from the Supreme Court's opinion in Accardi that the distinction which the Court of Appeals made in Accardi, and which this court makes in the instant case, between "seniority, status and pay" on the one hand and "fringe benefits" on the other does not seem very vital to the Supreme Court. The issue seems rather to be whether the rights and benefits claimed by the employees "would have automatically accrued to them had they remained in their civilian jobs" instead of entering the military service.

I think our decision is contrary to Accardi and that we should grant the petition for rehearing.