**Arthur J. BARRY, Plaintiff,**

v.

**Richard Joyce SMITH and William J. Kirk, Trustees of the New York, New Haven, and Hartford Railroad Company, Defendants.**

**Civ. A. No. 67–274–J.**

United States District Court
D. Massachusetts.

June 21, 1968.

Paul F. Markham, U. S. Atty., Stanislaw R. J. Suchecki, Asst. U. S. Atty., for plaintiff.

Edmund M. Sweeney, Boston, Mass., for defendants.

## OPINION

JULIAN, District Judge.

This is an action brought by a veteran against his employer contesting an alleged denial of full reemployment rights guaranteed by Section 8 of the Selective Training and Service Act of 1940, as amended, former 50 U.S.C.App. § 308, recodified as 50 U.S.C.App. § 459 (hereinafter the "Act"). The United States Attorney appears for plaintiff pursuant to 50 U.S.C.App. § 459(d). The parties have submitted the case to the Court upon an agreed statement of facts and upon briefs.

The factual basis of plaintiff's claim can be briefly stated. Plaintiff entered the employ of the New York, New Haven, and Hartford Railroad Company (hereinafter the "Railroad") for the first time

here relevant[1] on May 9, 1944, in the capacity of car cleaner. He left that employment just short of three months later, on August 5, 1944, to enter the military service of the United States. He served in the Navy from September 4, 1944, until March 25, 1946, when he was honorably discharged. Two weeks later, on April 8, 1946, he resumed employment with the Railroad and, with the exception of sick-leave absences not here relevant, has continued in that employment to date.

Plaintiff is a member of the Brotherhood of Railway Carmen of America. At all times pertinent his annual vacations have been governed by the terms of an Agreement dated December 17, 1941, as amended, between certain rail carriers (including the Railroad) and certain railroad unions (including plaintiff's union). That Agreement and its subsequent amendments[2] are hereinafter referred to as the "Agreement."

Under a 1964 amendment to the Agreement,[3] employees with 20 or more years of continuous service who, during those years, had rendered specified numbers of days of "compensated service" were entitled beginning in 1965 to receive an annual paid vacation of 20 consecutive work days. Plaintiff in 1965 was given a paid vacation of only 15 consecutive work days, which represented the length of paid vacation to which, under the Agreement, employees who had accumulated at least 15 but less than 20 years of continuous service were entitled.

Plaintiff claims that under Section 8 of the Act he is entitled to credit for the period of his military service, and that if given such credit he would have completed 20 continuous years of service in the Railroad's employ on May 9, 1964, and thus be entitled in 1965[4] to an additional five days of paid vacation.

The relevant parts of Section 8 of the Act, 50 U.S.C.App. § 459, are set forth in the margin.[5] The Railroad contends that under subsection (c) thereof vacation pay is not an element of seniority but, rather, one of the "other benefits"

1. Plaintiff had previously been employed by the Railroad in the same capacity from May 22, 1943, until September 6, 1943, but he does not base his claim on that period of service.

2. The Agreement and its amendments are contained in Exhibit A attached to the Stipulation of Facts. The reference to Exhibit B in the Stipulation of Facts obviously refers to the same documents.

3. A November 21, 1964, Memorandum of Agreement added to Article III of the Agreement a new paragraph (d) which provided:

"(d) Effective with the calendar year 1965, an annual vacation of twenty (20) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service on not less than one hundred (100) days during the preceding calendar year and who has twenty (20) or more years of continuous service and who, during such period of continuous service renders compensated service on not less than one hundred (100) days (133 days in the years 1950–1959 inclusive, 151 days in 1949 and 160 days in each of such years prior to 1949) in each of twenty (20) of such years, not necessarily consecutive."

4. In the years subsequent to 1965 plaintiff has received a paid vacation of 20 consecutive work days. His claim is therefore confined to the year 1965.

5. "(a) Any person inducted into the armed forces under this title for training and service, who * * * satisfactorily completes his period of training and service * * * shall be entitled to a certificate to that effect * * *.

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service * * *—

\* \* \* \* \*

"(B) if such position was in the employ of a private employer such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer * * * to such position or to a position of like seniority, status, and pay;

\* \* \* \* \*

"(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph * * * (B)

mentioned in that section. Thus, the Railroad argues, plaintiff's vacation eligibility is governed by the "established rules and practices" of the Railroad regarding "employees on furlough or leave of absence." "Established rules and practices," the argument continues, in this case means the Agreement, which in turn conditions the length of paid vacation on the number of years during which the employee performed "compensated service." "Compensated service" is said to mean actual time on the job for which the employee is paid. Therefore it is said to follow that, since those on furlough do not perform "compensated service" in that sense, and since plaintiff's military service is to be so treated, his period of military service should not be included when calculating the length of paid vacation to which he is entitled.

The Railroad's argument is irreconcilable with the provisions and purpose of the Act as construed by the Supreme Court and must be rejected. That purpose was to ensure that "[h]e who was called to the colors was not * * * penalized on his return by reason of his absence from his civilian job." Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 284, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230. The method incorporated in the Act to accomplish that goal has sometimes been termed the "escalator principle," first expressed by the Supreme Court in *Fishgold,* supra, at 284–285, 66 S.Ct. at 1105. The honorably discharged veteran returning to civilian employment

> "must be restored to his former position 'or to a position of like seniority, status, and pay' * * * he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." Id. at pp. 284–285, 66 S.Ct. 1111.

The Railroad contends that this "escalator principle," which in 1948 was codified in the Act,[6] applies only to a narrow conglomeration of rights labelled "seniority" but not to so-called "fringe benefits," such as vacation pay. The language of § 459(c) (2), however, is not so limited. Nor does such a restricted interpretation appear in the Supreme Court's subsequent restatements of the rule.[7]

Any lingering doubts on this point were resolved, in any event, by a recent pair of Supreme Court decisions. Two earlier Second Circuit decisions had held that vacation pay did

> "not come within those provisions of [§ 459(c)] ensuring restoration of a veteran's rights without loss of seniority, but within the provision that a veteran 'shall be entitled to participate in insurance or other benefits

---

of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph * * * (B) of subsection (b) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

6. Section 9(c) (2) thereof, 62 Stat. 604, 615–616, as amended (now 50 U.S.C.App. § 459(c) (2), set forth in note 5 above); McKinney v. Missouri-Kansas-Texas Railroad Co., 1958, 357 U.S. 265, 271 n. 3, 78 S.Ct. 1222, 2 L.Ed.2d 1305.

7. Oakley v. Louisville & Nashville Railroad Co., 1949, 338 U.S. 278, 283, 70 S.Ct. 119, 94 L.Ed. 87 ("a position which, on the moving escalator of terms and conditions affecting that particular employment"); accord, Tilton v. Missouri Pacific Railroad Co., 1964, 376 U.S. 169, 174–175, 84 S.Ct. 595, 11 L.Ed.2d 590.

offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence * * * ' " [8]

Thus the "escalator principle" was held inapplicable to vacation pay. Both decisions rested on the notion that vacation rights represented compensation for work actually performed. Directly conflicting with the *Alvado* and *Siaskiewicz* cases were two Third Circuit decisions which held that vacation rights created by collective bargaining *were* protected by the "escalator principle" of the Act.[9]

These conflicting viewpoints came to a head in Accardi v. Pennsylvania Railroad Co., 1966, 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717. In that case World War II veterans discharged by the railroad claimed that the amounts of separation allowances paid to them were too small. The amount of severance pay was determined, under the agreement, according to each employee's "length of compensated service." The railroad, however, had refused to treat the years plaintiffs had served in the armed services as years of "compensated service." The Court of Appeals, citing *Alvado,* supra, upheld the railroad's position that separation benefits were fringe benefits rather than the "seniority, status, and pay" protected by the "escalator principle" of 50 U.S.C.App. § 459(b) (B) and (c).

The Supreme Court reversed, noting that

"The term 'seniority' is nowhere defined in the Act, but it derives its content from private employment practices and agreements. This does not

mean, however, that employers and unions are empowered by the use of transparent labels and definitions to deprive a veteran of substantial rights guaranteed by the Act. * * * The term 'seniority' is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress as expressed in the 1940 Act. That intention was to preserve for the returning veterans the rights and benefits which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country." 383 U.S. at 229–230, 86 S.Ct. at 771.

The Court therefore held that the railroad's refusal to include as "compensated service" the period plaintiffs had spent in the armed forces violated § 459(b) (B) and (c).

"The requirements of the 1940 Act are not satisfied by giving returning veterans seniority in some general abstract sense and then denying them the perquisites and benefits that flow from it." 383 U.S. at 230, 86 S.Ct. at 772.

Finally, the Court disposed of the lower court's distinction between "seniority, status, and pay" under § 459(b) (B) and the "other benefits" under § 459(c), stating

"Without attempting in this case to determine the exact scope of this provision of [§ 459(c)] it is enough to say that we consider that it was intended to add certain protections to the veteran and not to take away those

---

8. Alvado v. General Motors Corp., 1956, 2 Cir., 229 F.2d 408, 410–411, certiorari denied, 1956, 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497; accord, Siaskiewicz v. General Electric Co., 1948, 2 Cir., 166 F.2d 463, 465–466.

9. Mentzel v. Diamond, 1948, 3 Cir., 167 F.2d 299 (factual situation essentially identical to the instant case); accord, McLaughlin v. Union Switch & Signal Co., 1948, 3 Cir., 166 F.2d 46, 48–49, where the court stated:

"Vacation advantages accorded employees are certainly no less to be prized

than such benefits as pensions, bonuses, and participation in insurance programs; and the Congrestional history of [the Act] makes it clear that the statute was intended to protect these other rights.

"In view of these considerations, we can see no reason why the protection of the [Act] in appropriate cases should not embrace vacation rights which the employee has earned and would have received as a matter of course but for his induction."

which are granted him by [§ 459(b) (B)] and the other clauses of [§ 459 (c)]." 383 U.S. at 232, 86 S.Ct. at 773.

The Railroad here seeks to distinguish the vacation benefits in the instant case from the severance allowances in *Accardi*. Such a distinction, however, is untenable in view of Eagar v. Magma Copper Co., 1967, 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557. In that case the Ninth Circuit had held, citing *Siaskiewicz*, supra, that vacation rights were not "seniority, status, [or] pay" protected by § 459(b) (B) but rather constituted "other benefits" subject under that clause of § 459(c) to whatever contractual provisions the employer had made with the union. Even after the *Accardi* decision the Court of Appeals adhered to this view and denied a petition for rehearing over a dissent by Judge Madden who argued that under *Accardi* vacation benefits were a perquisite of seniority.[10] The Supreme Court reversed, citing *Accardi*.

 In view of this decisional history, I hold that plaintiff's vacation rights are protected by § 459(b) (B) and (c) of the Act and that the Railroad's refusal, in computing the length of plaintiff's continuous service, to include as "compensated service" the period during which he served in the Navy violated the Act.[11]

The Railroad's additional argument, that plaintiff is not entitled to receive credit for this period because at the time he entered military service he had not been employed for seven months as required by the Agreement,[12] is also

10. The original opinion and the opinion denying a rehearing, dated 1966 and 1967 respectively, are both reported at 380 F.2d 318.

11. *Accord*, Saleck v. Great Northern Railway Co., 1967, D.Minn., 277 F.Supp. 936; Edwards v. Clinchfield Railroad Co., 1967, E.D.Tenn., 278 F.Supp. 751; *contra*, Morton v. Gulf, Mobile & Ohio Railroad, 1967, E.D.Mo., 277 F.Supp. 434.

12. Article I(g) of the August 21, 1954 amendment to the Agreement provided:

rejected. The Act applies to all non-temporary jobs without any qualifying time limit, and no "agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." Fishgold v. Sullivan Corp., supra, 328 U.S. at 285, 66 S.Ct. at 1111.

Plaintiff is entitled to an annual vacation of twenty consecutive work days with pay for the year 1965. Accordingly, it is ordered that judgment be entered in favor of the plaintiff.

"(g) In instances where employees have performed seven (7) months' service with the employing carrier or have performed, in a calendar year, service sufficient to qualify them for a vacation in the following calendar year, and subsequently become members of the Armed Forces of the United States, the time spent by such employees in the Armed Forces will be credited as qualifying service in determining the length of vacations for which they may qualify upon their return to the service of the employing carrier."