Robert E. **MORTON**, Appellant,

v.

**GULF, MOBILE AND OHIO RAILROAD COMPANY**, Appellee.

No. 19243.

United States Court of Appeals
Eighth Circuit.

Jan. 2, 1969.

Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., for appellant; Edwin L. Weisl, Jr., Asst. Atty. Gen., Dept. of Justice, and John C. Eldridge, Atty., Dept. of Justice, Washington, D. C. and Veryl L. Riddle, U. S. Atty., St. Louis, Mo., with him on brief.

Alphonso H. Voorhees, of Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for appellee; G. Carroll Stirbling, Jr., St. Louis, Mo., with him on brief.

Before VOGEL, LAY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Appellant Robert E. Morton began working as an electrician for the Gulf, Mobile & Ohio Railroad Company ("Railroad") in 1950 and continued in this employment until April 6, 1951, when he left his position to serve in the United States Air Force for a period of four years. On April 18, 1955, five days after his honorable discharge from the Air Force, Morton resumed, and has since continued, his employment with the Railroad. In May of 1967, Morton instituted this action against his employer for recovery of accrued vacation pay and for a decree directing the Railroad to credit him with the time spent in the military in calculating the length of his paid vacations. Morton contends that the Railroad has denied him seniority rights contrary to § 9 of the Universal Military Training and Service Act, former 50 U.S.C.A. App. § 459 (1951).[1] Federal jurisdiction having been established, 50 U.S.C.A. App. § 459(d),[2] the district court denied Morton's claim and dismissed his action. Morton v. Gulf, Mobile & Ohio R. Co., 277 F.Supp. 434 (E.D.Mo.1967). Morton appeals and we reverse.

Rights and obligations of the employer and the employees are governed by periodically executed collective bargaining agreements. These agreements specify that employees are granted paid vacations, the length of which is determined for each employee according to the number of consecutive years in which he has performed a minimum number of days of "compensated service" for the Railroad.[3]

1. This provision was re-enacted as part of the Selective Service Act of 1967, 50 U.S.C.A.App. § 459 (1968).

2. In accordance with this section, government counsel have represented employee Morton.

3. "Compensated service" means paid working time. As applicable to Morton's status, the collective bargaining agreement reads:

"* * *

(b) Effective with the calendar year 1965, an annual vacation of ten (10) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service on not less than one hundred ten (110) days during the preceding calendar year and who has three (3) or more years of continuous service and who, during such period of continuous service renders compensated service on not less than one hundred ten (110) days (133 days in the years 1950–1959 inclusive, 151 days in 1949 and 160 days in each of such years prior to 1949) in each of the three

(3) of such years, not necessarily consecutive.

(c) Effective with the calendar year 1965, an annual vacation of fifteen (15) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service on not less than one hundred (100) days during the preceding calendar year and who has fifteen (15) or more years of continuous service and who, during such period of continuous service renders compensated service on not less than one hundred (100) days (133 days in the years 1950–1959 inclusive, 151 days in 1949 and 160 days in each of such years prior to 1949) in each of fifteen (15) of such years, not necessarily consecutive.

(d) Effective with the calendar year 1965, an annual vacation of twenty (20) consecutive work days with pay will be granted to each employee covered by this Agreement who renders compensated service on not less than one hundred (100) days during the preceding calendar year and who has

The Railroad considered that Morton had rendered sufficient compensated service in each year following his 1955 re-employment to qualify him, under the then effective collective bargaining agreement, for ten days of paid vacation in both 1966 and 1967, which is the normal vacation for employees with ten consecutive years of active service with the Railroad. In seeking additional vacation benefits, Morton contends that, for the purpose of determining his vacation benefits, the time spent in military service should have been considered as equivalent to compensated employment with the Railroad. With such calculation, Morton had achieved fifteen years of continuous service with the Railroad by the beginning of 1966 and, accordingly, he asserts entitlement to fifteen days of vacation pay in the year 1966 and in the year 1967. Section 9(c) of the Universal Military Training and Service Act, 50 U.S.C.A. App. § 459(c), provided, in part, that a reemployed veteran such as Morton

> "shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of *seniority*, [and] shall be entitled to participate in insurance or *other benefits* offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces * * *." (Emphasis added)

■ Appellee Railroad, in denying Morton's claim to an increased vacation entitlement, contends that "vacation pay" is not an element of § 9 seniority, but rather should be considered as one of the "other benefits" for the purposes of that section. It is urged that if another employee similarly situated to Morton had

been on leave of absence from the Railroad rather than in military service for the same four years, he would not have performed "compensated service" as defined by the collective bargaining agreement and would not have been entitled to more than ten days of vacation pay in 1966 and in 1967. The issue here, however, is whether vacation pay is a seniority right under the statute. If so, Morton's service time counts; if not, Morton is to be treated as any other employee who had been on non-military leave.

■ Morton's right to increased vacation benefits is a necessary perquisite of his § 9 seniority rights. We hold that the Railroad's failure, in calculating vacation pay, to credit Morton with "compensated service" time for the period in which he was in the armed forces violated § 9(c) of the Act. Without this inclusion, Morton would not be accorded reinstatement in this employment "without loss of seniority" as is required by the Act. Eager v. Magma, Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967); Accardi v. Pennsylvania R. Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed. 2d 717 (1966).

We are benefitted by those teachings of the Supreme Court in similar controversies. In Accardi v. Pennsylvania R. Co., supra, an employer granted, pursuant to a union agreement, separation allowances to employees whose services were terminated by the employer. The allowances increased in proportion to the length of time an employee had rendered "compensated service". The Supreme Court held that the employer was required to include the period of military service of re-employed veterans in computing the amount of their severance pay. Such separation allowances were included within the seniority rights guaranteed by the Act.

> twenty (20) or more years of continuous service and who, during such period of continuous service renders compensated service on not less than one hundred (100) days (133 days in the

> years 1950–1959 inclusive, 151 days in 1949 and 160 days in each of such years prior to 1949) in each of twenty (20) of such years, not necessarily consecutive."

Similarly, in Eagar v. Magma Copper Co., supra, a collective bargaining agreement provided for paid vacations at the end of a work year to any employee who had been employed for at least one year and had worked seventy-five per cent of the shifts available to him that year. The agreement also stipulated for holiday pay to those employees who worked the shifts immediately preceding and immediately subsequent to the holiday and who had been on the payroll for three consecutive months prior to the holiday. Employee Eagar began working for the company on March 12, 1958, and entered military service one week before the one-year anniversary date of his employment. Following his military discharge, he returned to company employment on May 2, 1962. Although Eagar had worked seventy-five per cent of the shifts for the year ending March 12, 1959, and had worked the shifts both before and after Memorial Day and Independence Day in 1962, Magma refused him vacation benefits and holiday pay for those periods because: (1) As to vacation pay, he was not in the service of the company at the end of the vacation-earning year as was required by the contract, and (2) as to holiday pay, he had not been on the company payroll for three consecutive months prior to either holiday. The Ninth Circuit sustained the employer's position. Magma Copper Co. v. Eagar, 380 F.2d 318 (1966). Relying on *Accardi*, the Supreme Court reversed per curiam. Eagar v. Magma Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967).[4]

Appellee Railroad seeks to distinguish both cases from the present controversy: *Accardi*, because in that case the seniority rights sprang from actual work per-formed; *Eagar*, because in that case the employee had actually earned vacation pay and he would have received that payment had he stayed with the company for another week. Noting that the instant collective bargaining agreements predicate additional vacation pay upon work performed and not upon time in employment, the Railroad asserts that additional vacation benefits are not incidental to seniority. Such rationale, it asserts, is consistent with *Eagar* and *Accardi*. We disagree.

■ Congress has broadly protected the re-employment rights of veterans since 1940.[5] The purpose of the Act is to insure that, on re-employment, those who have served their country will be accorded equivalent privileges with those who have stayed behind. In Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), the Court articulated the "escalator principle" for determining a re-employed veteran's rights under the Act:

> "Thus he [the veteran] does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war. * * *
>
> * * * * * *
>
> This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. * * * Our problem is to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." 328 U.S. at 284–285, 66 S.Ct. at 1111.

---

4. Mr. Justice Douglas, joined by Mr. Justice Harlan and Mr. Justice Stewart, dissented on the ground that the determination of *eligibility* for vacation benefits properly fell within the "other benefits" clause of § 9(c) but assumed, consistent with the majority action, that the length of vacations and the amount of vacation pay and holiday pay "turn on seniority". 389 U.S. at 325, 88 S.Ct. 503.

5. The general history of the statute prior to re-enactment in the present code is outlined by Mr. Justice Goldberg in Tilton v. Missouri Pacific R. Co., 376 U.S. 169, 174, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964).

This principle has consistently been reaffirmed by the Supreme Court. Tilton v. Missouri Pacific R. Co., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964); Oakley v. Louisville & Nashville R. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87 (1949); Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328 (1947). *Oakley* restated and clarified the test as follows:

> "[A]n honorably discharged veteran, covered by the statute, [is] entitled by the Act to be restored not to a position which would be the precise equivalent of that which he had left when he joined the Armed Forces, but rather to a position which, on the moving escalator of terms and conditions affecting that particular employment, would be comparable to the position which he would have held if he had remained continuously in his civilian employment." 338 U.S. at 283, 70 S.Ct. at 122.

The evidence discloses that during the four-year period that Morton was in the service, a fellow employee immediately below him on the seniority list worked a sufficient number of days to merit credit at the end of each year for additional future vacation benefits. Thus, had Morton stayed behind, he likely would have acquired the vacation pay

benefits he now seeks. Ever present variables which might affect consistency of employment, such as illness, lay-offs, reduction in work force, during the period in question will not necessarily bar the application of the seniority provisions of the statute. See, e. g., Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749 (1955); Tilton v. Missouri Pacific R. Co., 376 U.S. 169, 178, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964).[6]

Seniority, while not defined in the statute, derives its meaning from traditional private employment practices and agreements. Accardi v. Pennsylvania R. Co., supra, 383 U.S. at 229, 86 S.Ct. 768; Aeronautical Industrial Lodge 727 v. Campbell, 337 U.S. 521, 526–527, 69 S.Ct. 1287, 93 L.Ed. 1513 (1948). The broad scope of seniority rights for re-employed veterans under the Act are not to be eroded by fine factual distinctions. Congress has painted veteran's re-employment benefits with a full brush and not with a narrow stylus. *Accardi*, in conjunction with the Supreme Court's order in *Eagar*,[7] impels a conclusion that the earlier cases[8] relied on by appellant now lack weight on the issue before us.

■ Finally, appellee's conclusion that vacation pay is within the "other benefits" provision of the Act is not well taken. The provision, relating

---

6. The circuits, prior to *Accardi*, have differed on whether the "escalator principle" is applicable to vacation rights. For example, Borges v. Art Steel Co., 246 F.2d 735 (2nd Cir. 1957); Alvado v. General Motors Corp., 229 F.2d 408 (2nd Cir. 1956), cert. denied 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497 (1956); and Siaskiewicz v. General Electric Co., 166 F.2d 463 (2nd Cir. 1948), represent the Second Circuit's view that vacation benefits are "other benefits" and do not fall within the seniority provision of the Act. Accord, Foster v. General Motors Corp., 191 F.2d 907 (7th Cir. 1951), cert. denied, 343 U.S. 906, 72 S.Ct. 634, 96 L.Ed. 1324 (1952). Contra, Mentzel v. Diamond, 167 F.2d 299 (3rd Cir. 1948); McLaughlin v. Union Switch and Signal Co., 166 F.2d 46, 48–49 (3rd Cir. 1948). (All decided prior to *Accardi*)

7. Subsequent to the Supreme Court's decision in *Accardi*, the Ninth Circuit had denied a petition by the employee for a rehearing in Magma Copper Co. v. Eagar, 380 F.2d 318 (9th Cir. 1966), reh. denied, 380 F.2d 321 (1967) (Judge Madden dissenting), rev'd per curiam, 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967), on the ground that *Accardi* did not involve a "fringe benefit" type of claim.

8. Alvado v. General Motors Corp., supra, at n. 6; Brown v. Watt Car & Wheel Co., 182 F.2d 570 (6th Cir. 1950), cert. denied, 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636 (1950); Dwyer v. Crosby Co., 167 F.2d 567 (2nd Cir. 1948); Siaskiewicz v. General Electric Co., supra at n. 6; Borges v. Art Steel Co., supra at n. 6.

to "insurance and other benefits", was intended to add protections to the returned veteran, but does not take away seniority rights and benefits otherwise granted by the statute. Accardi v. Pennsylvania R. Co., 383 U.S. at 231–233, 86 S.Ct. 768.

Our opinion is consistent with Barry v. Smith, 285 F.Supp. 801 (D.Mass. 1968); Edwards v. Clinchfield R. Co., 278 F.Supp. 751 (E.D.Tenn.1967); Saleck v. Great Northern Ry. Co., 277 F.Supp. 936 (D.Minn.1967), all decided subsequent to *Eagar*.[9]

We conclude that Morton is entitled to an adjustment of his vacation pay status by adding the time that he spent in the Air Force to his "compensated service" credit. We reverse the judgment of the district court and remand this cause with instructions to enter judgment in accordance with this opinion.

9. We note the decision of the court below was rendered post-*Accardi*, but prior to *Eagar*.