Frank Robert **MESSINA**, Plaintiff,

v.

**CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE,** Defendant.

Civ. 1968-14.

United States District Court, W. D. New York.

Feb. 10, 1970.

H. Kenneth Schroeder, Jr., U. S. Atty. (C. Donald O'Connor, Asst. U. S. Atty., of counsel), for plaintiff.

James R. Hagan, Menlo Park, Cal., for defendant.

JOHN O. HENDERSON, Chief Judge.

This case has been submitted to the court on an agreed statement of facts.

Mr. Messina was first employed by Consolidated Freightways Corporation of Delaware, in Buffalo, New York, on April 24, 1962, as a casual (or temporary) dock worker. Mr. Messina worked from time to time in that capacity until September 30, 1963, when he was transferred to the regular payroll and became a regularly employed dock worker with seniority dating from that date.[1] Mr. Messina left his employment with Consolidated on February 15, 1965, for the purpose of performing military training and service, and was on that date inducted into the Armed Forces of the United States.

On January 26, 1967, Mr. Messina satisfactorily completed his period of military training and service and received a certificate so indicating. Mr. Messina applied for reemployment with Consolidated within the time prescribed by section 9 of the Universal Military Training & Service Act, and, on February 6, 1967, was reemployed by Consolidated as a dock worker at Buffalo, New York, at an hourly rate of pay of $3.29.

On March 11, 1967, upon application, Mr. Messina was granted a temporary leave of absence for personal reasons. On March 28, 1967, Consolidated notified Mr. Messina to return to work from that absence on April 3, 1967, or to show cause as to why he was unable to so report for work. In that notification, it was stated that failure to return to work, or to show a justification why it was not possible to do so, would result in Mr. Messina's removal from the seniority list. No reply to this notification was received from Mr. Messina and he

did not report to work on April 3, 1967. Accordingly, Mr. Messina's name was removed from the seniority list at Buffalo and, in practical effect, his employment with Consolidated terminated. At the time of Mr. Messina's termination of employment, if he were entitled to any vacation, he would receive pay in lieu thereof.

During his employment with Consolidated, Mr. Messina was a member of the Teamsters Union and, at the time he entered and returned from military service, his wages and working conditions were governed by the National Master Freight Agreement and the New York State Teamsters Joint Council Freight Division Local Cartage Supplemental Agreement. At page 34 of the National Master Freight Agreement, Article 15 thereof provides that employees who enter military service shall be accorded all rights and privileges guaranteed by law. At page 73 of the New York State Supplemental Agreement, Article 50 provides for vacations. That article has been consistently interpreted and enforced as follows. Regular employees who work at least 150 days in the contract year receive one week's paid vacation during the twelve month period next following each of their first two years of employment (computed from the date upon which they were hired), and receive two weeks' paid vacation during the twelve month period next following each of their third and subsequent years of employment.[2] The "contract year" here involved runs from August 1 of each year to July 31 of the following year.[3] (A copy of Article 15 and Article 50 are attached hereto as Exhibit "A".

Between February 6, 1967, when Mr. Messina returned from military training

1. As a result of a grievance filed by Mr. Messina, his seniority date was later changed from September 30, 1963, to August 1, 1963.

2. A union contract provision to the same effect governed vacation during Mr. Messina's employment in 1962 and 1963.

3. The earlier union contract ran from August 31, 1961 to July 31, 1964. The instant contract ran from August 1, 1964 to March 31, 1967, the termination date thereof having been changed from the traditional July 31 date to render it inconsistent with all other Teamster contracts so as to facilitate national bargaining.

and service, and the time his employment was terminated, he worked twenty-six (26) days. But for Mr. Messina's performance of military training and service, he might have been available for work, and possibly could have worked, 134 days between August 1, 1966 (the beginning of the contract year) and February 6, 1967, the date he actually returned to work. Had Mr. Messina actually worked those 134 days, he would have worked a total of 160 days during the contract year. Accordingly, at the time his employment was terminated, Mr. Messina would have been entitled to receive pay for two weeks' vacation. Article 56 of the New York State Supplemental Agreement provides that the standard guaranteed workweek shall be 40 hours. Therefore, two weeks vacation pay (80 hours) at Mr. Messina's hourly rate of pay of $3.29 would be $263.20.

On or about March 11, 1967, Mr. Messina made application to Consolidated for two weeks paid vacation. Consolidated refused Mr. Messina's claim because he had not actually worked 150 days during the contract year.

The Selective Service Act of 1967 provides, at Title 50 App. § 459(c):

(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in this employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

The issue presented can be stated as follows: Is a contract requirement, which establishes as a prequisite to vacation time that the worker be employed a certain number of days, a denial of rights secured to the veteran by the above quoted statute? Until recent years, courts have endeavored to distinguish between seniority rights and collateral benefits, and have rather uniformly held that vacation was a type of collateral benefit to which the returning veteran was not entitled unless a fellow employee on leave of absence for a similar length of time would receive the same benefit. Magma Copper Co. v. Eagar, 380 F.2d 318 (9th Cir. 1967). See generally Alvado v. General Motors Corp., 229 F.2d 408 (2d Cir. 1956), cert. denied, 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497 (1956); Dwyer v. Crosby Co., 167 F.2d 567 (2d Cir. 1948); Siaskiewicz v. General Electric Co., 166 F.2d 463 (2d Cir. 1948); Cushnier v. Ford Motor Co., 84 F.Supp. 491 (E.D.Mich. 1950); Brown v. Watt Car & Wheel Co., 91 F.Supp. 570 (D.C.Ohio 1949), aff'd, 6 Cir., 182 F.2d 570, cert. denied, 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636 (1950); Woods v. Glen Alden Coal Co., 73 F. Supp. 871 (M.D.Pa.1947). But see Mentzel v. Diamond, 167 F.2d 299 (3rd Cir. 1948); McLaughlin v. Union Switch & Signal Co., 166 F.2d 46 (3rd Cir. 1948) and Rydberg v. Great Northern Ry. Co., 12 F.R.D. 108 (D.C.Minn.1951). This neatly compartmentalized analysis concerning the rights of the returning veteran to benefits, however, was upset by the decision of the United States Supreme Court in Accardi v. Pennsylvania R. R., 383 U.S. 225, 86 S.Ct. 768, 15 L. Ed.2d 717 (1965). There the railroad had not included, in determining the severance allowances due the returning

veterans, the time that they had spent in the armed forces in arriving at the length of compensated service. The Court of Appeals reversed a judgment in the plaintiffs' favor and held that severance allowances were fringe benefits. The Supreme Court, however, rejected the classification and held for the veterans, saying at page 228, 86 S.Ct. at page 771:

"The language of the 1940 Act clearly manifests a purpose and desire on the part of Congress to provide as nearly as possible that persons called to serve their country in the armed forces should, upon returning to work in civilian life, resume their old employment without any loss because of their service to their country. * * "

The Court also observed:

"The term 'seniority' is nowhere defined in the Act, but it derives its content from private employment practices and agreements. This does not mean, however, that employers and unions are empowered by the use of transparent labels and definitions to deprive a veteran of substantial rights guaranteed by the Act. * * "
[383 U.S. at 229, 86 S.Ct. at 771]

Although the decision in *Accardi* concerned itself with severance benefits, the Supreme Court demonstrated that its reading of the statute, guaranteeing a veteran his job without loss of seniority or other benefits, is more liberal. Other courts have considered the question of vacation under the statute. Of course, a distinction can be made between those cases, involving a question of whether or not the returning veteran is entitled to a vacation, with those cases involving a question of what the length of the vacation to which the employee is entitled should be. See Barry v. Smith, 285 F. Supp. 801 (D.Mass.1968) and Saleck v. Great Northern Ry., 277 F.Supp. 936 (D.Minn.1967), holding that the length of time the employee was in military service is to be considered in a determination of the length of vacation to which he is entitled when determining the years of compensated service; and com-

pare Dugger v. Missouri Pac. R. R., 276 F.Supp. 496 (S.D.Tex.1967) and Morton v. Gulf Mobile & Ohio R. R., 277 F. Supp. 434 (E.D.Mo.1967), holding that the failure to work a certain number of days in the year barred the plaintiffs from being entitled to a vacation in the following year. The latter line of cases relies on the theory that, since an employee on leave of absence would not be entitled to vacation because he did not work the required number of days in the previous year, the veteran should not be entitled to such a benefit.

The distinction seems valid except that when one considers a year to contain approximately 250 work days, a contract requirement such as faced by Messina that he work 150 days in the contract year before he is entitled to vacation could work a hardship on those entering military service, since, if they left in the early part of June and returned in the latter part of July, on a calendar year basis they would not be entitled to vacation either for their service prior or subsequent to their military service. Considering this to be true, it would appear that the insertion of a 150-day contract requirement as a basis for determining eligibility for vacation, would work a distinct hardship on those being called to military service. Conceivably, in times such as these the number of people leaving civilian employment to enter the military service exceeds by large numbers the one requesting leave of absence from employment for other reasons. In any event, an identical issue was presented to the Ninth Circuit Court of Appeals in Magma Copper Co. v. Eagar, *supra*. There the plaintiffs were denied vacation and holiday pay by Magma Copper because they had not worked the 75% of available shifts as required by the contract in determining holiday and vacation pay because of their military service. The Ninth Circuit Court of Appeals reversed a judgment in favor of the workers and upheld Magma Copper's right to deny them vacation and holiday pay. The court analyzed the contract provisions in terms of "seniority" and fringe benefits

categories. The dissent stated in 380 F.2d at page 322:

"I gather from the Supreme Court's opinion in Accardi that the distinction which the Court of Appeals made in Accardi, which this court makes in the instant case, between 'seniority, status and pay' on the one hand and 'fringe benefits' on the other does not seem very vital to the Supreme Court. The issue seems rather to be whether the rights and benefits claimed by the employees 'would have automatically accrued to them had they remained in their civilian jobs' instead of entering the military service." [380 F.2d, 318 at 322]

The Supreme Court reversed the judgment in a per curiam opinion, citing Accardi v. Pennsylvania R. R., 389 U.S. 323, 86 S.Ct. 768, 15 L.Ed.2d 717 (1967). Mr. Justice Stewart and Mr. Justice Harlan concurred in Mr. Justice Douglas' dissent which demonstrates that the minority of the Court would continue the distinction between seniority rights and fringe benefits. The majority, in reversing, has ruled otherwise. On that basis, the plaintiff's motion for summary judgment is granted in all respects, and judgment is entered in favor of the plaintiff for $263.20 with interest.

It is so ordered.

### EXHIBIT A

**ARTICLE 15.**

**Military Clause** Employees enlisting or entering the military or naval service of the United States, pursuant to the provisions of the Selective Service Act of 1948, shall be granted all rights and privileges provided by the Act.

**ARTICLE 50—Vacations**

All employees who have worked one hundred and fifty (150) days or more in the contract year shall receive one (1) week vacation with pay within the contract year at the classification at which they worked the greatest number of days in the first hundred and fifty (150) days of the contract year. Those employed three (3) years or more shall receive two (2) weeks' vacation with pay each calendar year at the classification at which they worked for the greatest number of days in the six (6) month period prior to their vacation. Those employed ten (10) years or more shall receive three (3) weeks' vacation with pay each calendar year. Those employed sixteen (16) years or more shall receive four (4) weeks' vacation with pay each year thereafter. The vacation period shall be from January 1 to December 31, and the preferred vacation period shall be May 1 to October 1. But vacation time shall be assigned at the discretion of the Employer and shall meet with the convenience of the individual employee whenever reasonably possible. Seniority shall prevail at all times when selecting vacations. Employees shall receive an extra day's pay or an extra day off for any holiday falling within a vacation period.

Vacation pay shall be paid in advance provided employees give two (2) weeks' notice prior to starting vacation.

Regular employees laid off and rehired in the calendar year after the calendar year following lay-off, shall receive vacation pay based on one-twelfth (1/12) of vacation he was entitled to for every thirty (30) days of employment in that calendar year up to six (6) months of employment. If employee works over six (6) months, he shall receive his full vacation pay.

Past practice shall prevail both as to the time of taking vacation and the number of employees entitled to be off on vacation at any time provided that a minimum of fifteen per cent (15%) of the total number of employees by classification shall be permitted to go on vacation between May 1st and October 1st each year.

If an employee's paid vacation period accrues or is payable during a period in which he is otherwise entitled to unemployment compensation, the employee's right to and payment for such vacation shall be deferred until after termination of the unemployment benefit period. The Employer waives the privilege of allocating vacation pay to past, present or future weeks of unemployment.