341 F.2d 72
 Pasquale J. ACCARDI, Jacob Grubesick, Alfred J. Seevers, Anthony J. Vassallo, Abraham S. Hoffman, and Frank D. Pryor, Plaintiffs-Appellees,
v.
The PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellant.
 No. 153.
 Docket 29022.
 United States Court of Appeals Second Circuit.
 Argued November 12, 1964.
 Decided January 25, 1965.
 
 Robert M. Morgenthau, U. S. Atty., Southern District of New York (James G. Greilsheimer, Asst. U. S. Atty., of counsel), for plaintiffs-appellees.
 Conboy, Hewitt, O'Brien & Boardman, New York City (R. L. Duff, New York City, of counsel), for defendant-appellant.
 Before LUMBARD, Chief Judge, SWAN and WATERMAN, Circuit Judges.
 WATERMAN, Circuit Judge:
 
 
 1
 Plaintiffs, veterans of World War II, brought suit in the United States District Court for the Southern District of New York. They claimed that defendant, their former employer, had denied them that portion of a separation allowance, granted in 1960, to which they were entitled under Section 8 of the Selective Training and Service Act of 1940, 50 U.S.C. App. § 308 (1946).[1] Upon cross motions for summary judgment, Judge Metzner awarded the sums claimed by plaintiffs. His opinion is reported at 229 F.Supp. 193.
 
 
 2
 Defendant has appealed, arguing that the provision of Section 8 relied on by plaintiffs does not apply either to separation allowances or to benefits granted more than one year after an employee's return to work from military service. We reverse the district court on the applicability of Section 8 to separation allowances, and therefore we do not reach defendant's alternative ground for reversal. Nor need we discuss defendant's additional contention on appeal that the district court improperly computed the interest owing on the judgment awarded to plaintiffs.
 
 
 3
 The relevant facts in this case are stipulated. Plaintiffs first entered the employ of defendant in 1941 and 1942 as firemen on tugboats in New York harbor. They left their jobs during World War II to serve in the armed forces, but at the close of the war they were reinstated in their former positions. Thereafter, they worked continuously as tugboat firemen for defendant until 1960. In December of that year, defendant and the union which represented plaintiffs reached an agreement designed to settle a bitter dispute over reduction of work forces in connection with the transition from steam-powered to diesel-driven tugs. The contract abolished the job of fireman on the diesel tugs but awarded the displaced employees separation allowances that varied in amount according to each employee's "length of compensated service." Plaintiffs were permanently separated from defendant's employ pursuant to the contract, and, in computing their separation allowances, defendant credited them only with time actually spent in its employ for which they received wages.
 
 
 4
 This suit arises out of plaintiffs' claim that defendant should have included their years in the armed forces in calculating the separation allowances. Plaintiffs do not contend that the phrase "compensated service" was intended by defendant and the union to encompass military service. Rather, they argue that Section 8 of the Act requires that they be credited with their years in the armed forces, regardless of the intent of the parties to the agreement. Plaintiffs are correct in assuming that "no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). The problem presented by this case is that of whether the statute dictates that military service should have been included in "compensated service," irrespective of the intent of union and employer in choosing that language.
 
 
 5
 Section 8(b) (B) of the Act requires that a private employer restore a returning veteran "to [his former] position or to a position of like seniority, status, and pay * * *" Section 8(c) further provides:
 
 
 6
 "Any person who is restored to a position in accordance with the provisions of paragraph * * * (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."
 
 
 7
 If the separation allowances granted to plaintiffs in 1960 come within the statutory concepts of "seniority, status, and pay," plaintiffs are entitled to be treated as if they had kept their positions continuously during World War II. Fishgold v. Sullivan Drydock & Repair Corp., supra, at 284-285, 66 S.Ct. 1105. On the other hand, if the allowances constituted "insurance or other benefits," plaintiffs are not entitled to be credited with their years in the armed forces, for, with certain immaterial exceptions, the agreement between defendant and the union did not treat time spent by employees "on furlough or leave of absence" as "compensated service."
 
 
 8
 There are no decisions in this circuit or in the Supreme Court determining whether separation allowances are included within the categories of "seniority, status, and pay" or of "insurance or other benefits." However, in Borges v. Art Steel Co., 246 F.2d 735, 738 (2 Cir. 1957), we drew the line between the two categories as follows:
 
 
 9
 "While the problem of construction is difficult, it seems most likely that the expression `insurance or other benefits' was meant to cover a fairly narrow group of economic advantages whose common quality was that they were miscellaneous fringe benefits not usually regarded as part of `pay,' `status,' or `seniority.'"
 
 
 10
 In Borges, we ruled that "wage increases were in no sense fringe benefits, but became a regular part of the jobholder's pay or status, swelling his pay check every week he worked in the future * * *" Id. at 738-739. On the other hand, in Siaskiewicz v. General Elec. Co., 166 F.2d 463, 465-466 (2 Cir. 1948), we decided that "since vacation rights are not pay unless they are for work actually done, and since they are not merely a perquisite of seniority, they must fall under the heading of `other benefits.'" Accord, Alvado v. General Motors Corp., 229 F.2d 408, 410-411 (2 Cir. 1956), cert. denied, 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497; Dwyer v. Crosby Co., 167 F.2d 567 (2 Cir. 1948).
 
 
 11
 With some doubts, we hold that the separation allowances in the present case are properly "other benefits" rather than includable within "seniority, status, and pay." Unlike the wage increases in Borges, they did not become a regular part of plaintiffs' earnings, and, like the vacation rights in Siaskiewicz, they were neither pay for work actually done nor a traditional perquisite of seniority. On the contrary, they seemingly constituted only a miscellaneous benefit, devised ad hoc after intensive collective bargaining in order to serve a transitory purpose. We are confirmed in this conclusion by the decisions of two other Courts of Appeals. Hire v. E. I. du Pont de Nemours & Co., 324 F.2d 546, 549-550 (6 Cir. 1963); Seattle Star, Inc. v. Randolph, 168 F.2d 274 (9 Cir. 1948). There are no appellate decisions to the contrary.
 
 
 12
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 Now 50 U.S.C.A. App. § 459