Jerry Bob BRADLEY, William J. Cochran, Amos Lee Harber, Theodore W. Moye, Raymond Harold Papka, Jerome J. Pie-karski, Kenneth L. Robertson, and Freddie Eugene Thompson, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, a Corporation, Defendant.

No. 67 C 239(3).

United States District Court
E. D. Missouri, E. D.

March 6, 1968.

Veryl L. Riddle, U. S. Atty., W. Francis Murrell, Jim J. Shoemake, Asst. U. S. Attys., St. Louis, Mo., for plaintiffs.

Alfred A. Speer, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
AND ORDER

REGAN, District Judge.

In this action brought by eight employees of General Motors Corporation, under Section 9 of the Universal Military Training Act, Section 459, 50 U.S.C.

War App., all parties have filed motions for summary judgment.

Plaintiffs seek judgment for the amount of a paid absence allowance credit provided for under the terms of a collective bargaining agreement effective November 10, 1964. For reasons stated infra, we sustain defendant's motion for summary judgment and deny the motion of plaintiffs for summary judgment.

The facts have been stipulated. The determinative facts are the same as to all plaintiffs other than Moye. Each plaintiff, with the exception of Moye, had more than one year of seniority previous to his entry into military service. Each of these plaintiffs was granted a military leave of absence by defendant and was inducted into the armed forces in the year 1963. Each of them was honorably discharged in 1965 and was restored to his employment shortly after his discharge. Moye's employment commenced May 6, 1963. He entered military service on January 23, 1964, was honorably discharged on January 20, 1966, and was granted restoration of his employment on January 31, 1966. All plaintiffs have remained continuously in defendant's employ since their return from service.

The collective bargaining agreement entered into by the defendant and the Union representing plaintiffs provides that an employee is eligible for both a vacation pay allowance and a paid absence allowance credit "provided he has at least one year's seniority as of his first eligibility date occurring after the effective date of this Agreement and has worked at least 13 pay periods during his eligibility year." Pay periods are weekly. The eligibility period involved as to all plaintiffs other than Moye is the calendar year ending December 31, 1965. As to Moye, his eligibility year is from July 1, 1964 to June 30, 1965. An eligible employee who has worked at least 26 weeks in his eligibility year is entitled to 100 per cent of both the full vacation pay allowance and the full paid absence allowance credit. Those who have worked fewer pay periods, but not less than 13, receive varying percentages of the allowances, while those who have worked less than 13 pay periods are not eligible to either allowance. Although the amount of the vacation pay allowance is dependent on the employee's number of years of seniority, the number of hours for which the paid absence allowance credit is granted remains the same for all eligible employees. That is, an employee with one year's seniority is credited with the same number of hours paid absence allowance credit as is an employee with fifteen or more years' seniority.

Section 9(c) (1) of the Act, Section 459(c) (1), 50 U.S.C. War App., provides that a veteran who is required to be restored to his position with his employer shall be restored without loss of seniority and "entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time" the employee was inducted into the armed forces. In Section 9(c) (2), the statute further declares it to be the sense of Congress that the returning veteran shall be restored to his position "in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." This so-called "escalator principle" had been announced two years previously in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230. Thus, the escalator principle "means that *for the purpose of determining seniority* the returning veteran is to be treated as though he has been continuously employed during the period spent in the armed forces." Accardi v. Pennsylvania Railroad Co., 383 U.S. 225, 228, 86 S.Ct. 768, 771, 15 L.Ed.2d 717.

The parties have stipulated that none of the plaintiffs claim and there is no issue in this case as to any nonpayment

by defendant of the vacation pay allowance provided for in the agreement or of the paid absence allowance credit with respect to any part of any eligibility year of the respective plaintiffs, other than the years above mentioned. Hence, the sole issue under the pleadings and stipulation is whether each plaintiff is entitled to 40 hours absence allowance credit for the eligibility year prior to his restoration to employment despite the fact that he did not perform any work for defendant in any of the 52 pay periods occurring in that eligibility year.

Plaintiffs contend that the right of each of them to the paid absence allowance credit and the amount of such paid absence allowance is a perquisite of seniority. On the other hand, defendant urges that since the right to the paid absence allowance credit is conditioned by the collective bargaining agreement upon actual work performed by the employee in the requisite number of pay periods, plaintiffs are not entitled to the allowance. We agree with defendants.

Plaintiffs urge that Accardi v. Pennsylvania Railroad Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717, controls this case, particularly in the light of the reversal by the Supreme Court, subsequent to the submission of the motions, of Magma Copper Company v. Eagar, 9 Cir., 380 F.2d 318. In Morton v. Gulf, Mobile and Ohio Railroad, 277 F.Supp. 434, decided prior to the reversal of Magma, in determining a veteran's right to vacation pay, we gave careful consideration to both the Accardi and Magma decisions and held that on the facts both were clearly distinguishable from Morton. We stated that even a reversal of Magma would not necessarily be decisive of Morton, pointing out that no generalizations are permissible since the employee's rights are dependent upon the language and purposes of the particular contractual provisions involved. We believe that what we there said is also here applicable, with the added comment that because of the difference in facts between the present case and Morton, even

a reversal of Morton would not necessarily be decisive of the instant case.

In Accardi, the veteran began working for the railroad as a fireman on a tugboat in 1941, left his job in 1942 to enter the armed services, and after serving three years or more was restored by the railroad to his former position as fireman with the same amount of seniority he had before leaving plus credit for the time spent in the armed forces, and continued to work for the railroad until 1960. At that time, in conjunction with the settlement of a strike, all firemen with less than twenty years seniority were discharged, but were to be paid a severance or separation allowance, which was to be determined by the length of "compensated service" with the employer. The agreement defined a month of such service as any month in which the employee worked one or more days, and defined a year of such service as twelve such months or a major portion thereof.

The issue in Accardi was whether the railroad had the right to exclude the three years or more spent in the armed forces in computing the amount of the employee's separation allowance although no "compensated service" had been rendered in those years. The determining factor as to whether a particular employee was to be separated from employment was his *seniority*. The Court held that the *real* nature of the payments provided for "was compensation for loss of jobs. And the cost to an employee of losing his job is not measured by how much work he did in the past—no matter how calculated—but by the rights and benefits he forfeits by giving up his job." Hence, the Court reasoned, it was only natural that those with the most seniority should receive the highest allowances since they were giving up more rights and benefits than those with less seniority. On that premise, it was held that the amount of the separation allowance "is just as much a perquisite of seniority as the more traditional benefits such as work preference and order of lay-off and recall." Thus, in the factual context of Accardi, the term "compen-

sated service" as therein defined (many years after the veteran had been restored to his employment) was no more than a transparent label which could not operate to deprive the veteran of his substantial right to be compensated for the loss of his job on the basis of what he was *actually giving up*. In truth, *seniority* was the basis for determining the amount of severance pay in *Accardi*, just as it was the basis upon which the employee either retained or lost his job as a result of the settlement.

*Magma* involved a claim to vacation pay under a contract which provided that to qualify therefor the employee must have been continuously employed by the company for at least one year and have worked at least 75 per cent of his available shifts within said year. However, there was a further provision in the contract that an employee leaving the service of the company prior to the end of his vacation earning year for any reason other than layoff due to reduction of work force shall not be entitled to the vacation benefits. Magma's refusal to pay was on the ground that the returning veteran had not been in the "service" of the company at the end of the vacation earning year. Eagar had been continuously employed by Magma for a period just a few days short of one year before entering military service, but had in fact worked in excess of 75 per cent of the shifts available in his vacation earning year. Thus, Eagar had actually earned his vacation pay and this benefit would have *automatically* accrued to him but for the fact that he had been called into military service. Eagar also had been denied holiday pay to which he was otherwise eligible on the ground that he had not been "on the Company's payroll continuously", after his return from military service, for 3 months prior to the holidays in question. As used in the contract, the quoted words obviously had the same meaning as "continuously employed."

Had Eagar been considered continuously employed by (or in the service of) the company during his service in the armed forces, as the statute clearly requires, there could be no question but that under the explicit terms of the contract he would have qualified for the vacation and holiday pay. In our view, perforce the statute, Eagar was in the service of the company the required period of time, and having "worked" in such service for the length of time provided for (75% of his available shifts within the year, and the shifts immediately before and after the holidays) his vacation and holiday pay was *earned* and should not have been denied to him.

In reversing *Magma*, the Supreme Court did so in a one sentence per curiam without discussion, on the authority of *Accardi*. We believe that *Accardi* stands for the proposition that where certain rights (e. g., the amount of a separation allowance) would have automatically accrued to an employee by reason of being in the service of an employer a specified length of time, such rights are protected by the statute. On that basis, *Accardi* controlled *Magma* since Eagar's right to vacation and holiday pay would have automatically accrued to him but for his military service.

In *Accardi*, there could be "no doubt that the amounts of the severance payments were based primarily on the employees' length of service with the railroad." No similar situation is here involved. Although the word "seniority" is used in the agreement both as to vacation pay and the paid absence allowance, its meaning and purpose is not the same in both instances. As to the latter what is intended thereby is to exclude temporary employees and all others who have not been in the regular employ of the defendant for one year from the eligibility date. All but Moye met this one year test prior to their induction in the armed forces, and since Moye's "seniority" continued *to accrue during* his military service his situation is identical to that of the other plaintiffs. We have noted that under the contract, it is immaterial how much longer than a year an employee is in the service of the employer. In each instance, the number of hours paid ab-

sence allowance credit granted to him is dependent solely on the number of pay periods the employee actually *worked* during his eligibility year.

In *Accardi*, discussing the real nature of the severance payments, the Supreme Court took note of the "bizarre results" which could otherwise follow by literal application of the contract definition of "compensated service." Plaintiffs' brief attempts to demonstrate similar "bizarre results" in the instant case. They argue that an employee who works one day in each of the 26 pay periods in his eligibility year would receive the same paid absence allowance credit as an employee who worked every day. However, when the agreement is read as a whole, with particular reference to the provisions for layoff and hiring procedure, the possibility of such an eventuality is so remote as not to merit consideration.

We have concluded that the paid absence allowance credit provided for in the agreement constitutes additional compensation for work performed in the eligibility year, although it is intended to be used during the following year. Supporting this conclusion are several other provisions in the agreement. Thus, if an employee who has worked at least thirteen pay periods in his eligibility year dies prior to his eligibility date, his paid absence allowance credit is not lost, but the amount to which he would have been entitled had he lived, based on the number of pay periods worked, is paid to his legal representative (or if there be none, to his wife, etc.). So, too, if the employee dies after his eligibility date, any unused portion of his paid absence allowance credit is paid to his legal representative or spouse, etc. Other comparable provisions of the contract similarly demonstrate the true nature of the allowance. The theory of the agreement is that the paid absence allowance credit has been earned during the eligibility year, and having been so earned, the employee (or his estate) may not be de-prived thereof by reason of death or the failure for other reasons to utilize such credit.

Actually, the result could be even more "bizarre" if plaintiffs' theory were to be accepted. For example, a veteran whose eligibility year ended December 31, 1965, who was restored to his position on January 3, 1966, and who died immediately after such restoration, either the same or the following day, would receive a full forty hours paid absence allowance credit to be paid to his estate, although if he had died immediately before his actual restoration to employment became effective nothing would be due or payable.

We also note the provision in the agreement which protects the rights of employees inducted into the armed forces. Thus, an eligible employee who is placed on or returns to work from a leave of absence for military service and who has not worked at least thirteen pay periods (the normal minimum) in the eligibility year during which his leave of absence for military service begins or ends is paid 1/26th of the paid absence allowance credit for each pay period worked during such eligibility year.

The paid absence allowance in this case is not a perquisite of seniority. It is to be paid only to those who have earned it by working the specified number of pay periods during their eligibility year. We see no more reason under the agreement to require defendant to pay plaintiffs the forty weeks absence allowance credit they have not earned than to require defendant to pay them the wages plaintiffs would have earned but for their military service on the theory that they had been "continuously employed" during the period they spent in the armed forces.

Plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is sustained. The Clerk is directed to enter judgment in favor of defendant and against plaintiffs without costs.