John **GENTILE**, Plaintiff,

v.

**UNITED STATES TRUCKING CORPORATION**, Defendant and Third-Party Plaintiff,

v.

Saverio **AIELLO** et al., Trustees of Teamsters Local 814 Moving and Storage Welfare Fund, Third-Party Defendants.

No. 70 Civ. 2598.

United States District Court, S. D. New York.

. Jan. 10, 1973.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y. (Gerald A. Rosenberg, Asst. U. S. Atty., of counsel), for plaintiff-movant Gentile.

Zelby & Burstein, New York City, for defendant and third-party plaintiff Trucking.

Cohen, Weiss & Simon, New York City (Bruce Simon, New York City, of counsel), for third-party defendant Trustees.

OPINION

TENNEY, District Judge.

This is an action for money damages brought by a National Guard Reservist against his civilian employer, the United States Trucking Corporation (hereinafter "Trucking"), under the provisions of the Veterans Reemployment Rights Act, as amended, 50 U.S.C. App. § 459 (1970). The employer has impleaded the Trustees of Teamsters Local 814 Moving and Storage Welfare Fund (hereinafter "Local 814 Welfare Fund") as third-party

defendants. The complaint charges defendant employer with violation of 50 U.S.C. App. § 459(g)(4), relating to the rights of Reservists and National Guardsmen to return to their civilian employers without loss of "seniority, status, pay and vacation" as a result of time spent in inactive duty training with their military units.

Plaintiff has moved herein for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. There would not appear to be any genuine issue as to any material fact, and the following facts are not disputed:

1. Plaintiff Gentile was employed by defendant Trucking as a "Helper" on a daily shape-up basis from June 1, 1962, to December 2, 1963, at which time he entered military service for initial active duty for training. Plaintiff was reinstated in June 1964 by defendant Trucking in his former position.

2. Plaintiff continued to work for defendant Trucking as a Helper until July 16, 1966, when he entered military service for two weeks' inactive duty training, which training was concluded July 31, 1966.

3. Plaintiff resumed his duties with defendant Trucking on the next working day after the completion of his inactive duty training on July 31, 1966.

4. On September 30, 1965, Local 814, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, entered into a Collective Bargaining Agreement with Empire State Highway Transportation Association Inc. on behalf of certain employers, including defendant Trucking, for the period 1965–1968 for the Sears-Roebuck Company job. Article 21 thereof provided that after July 1, 1965, the employer would contribute a stated sum of money to the third-party defendant Local 814 Welfare Fund for every hour of work for which an employee covered by the Collective Bargaining Agreement, including plaintiff, was paid. Article 21 thereof further provided that "[i]n consideration of such contributions the employees so paid for

shall be entitled to the benefits furnished by the Welfare Plan of said Fund in accordance with the rules and regulations adopted and promulgated by the Trustees of the Fund."

5. A booklet published by the third-party defendant Local 814 Welfare Fund in effect in 1966 provided that an employee

"will become eligible for benefits on the first day of the third month following the month in which [the employee] worked 72 or more hours. . . . [The] insurance will terminate on the following dates, whichever occurs first:

"(1) The last day of the second calendar month following the month in which [the employee works] less than 72 hours for Contributing Employers."

6. Plaintiff was ill and did not work for four days of the week ending July 16, 1966. As a result of his illness and the period of two weeks of his inactive duty training, plaintiff worked for and was paid by defendant Trucking for only 56 hours of work for the month of July 1966.

7. Plaintiff again was ill and was hospitalized at King's Highway Hospital in Brooklyn, New York, from October 4 through October 11, 1966, inclusive. Plaintiff was presented by agents of the aforesaid hospital with a bill in the amount of $437.10, and paid that amount in full.

8. Payment of the hospitalization costs described in paragraph 7, above, was denied by the Associated Hospital Service of New York (Blue Cross) on the ground that the third-party defendant Local 814 Welfare Fund had not certified the claim.

9. Defendant Trucking failed in July of 1966 to make payments to the third-party defendant Local 814 Welfare Fund for the four days plaintiff did not work due to illness and the two weeks plaintiff was on inactive duty training during July.

10. If defendant Trucking had made such payments to the third-party defendant Local 814 Welfare Fund, plaintiff would have been eligible for hospitalization coverage for the month of October 1966, and the Associated Hospital Service of New York (Blue Cross) would have certified plaintiff's claim for reimbursement for the hospitalization expenses he incurred at that time.

11. Defendant Trucking on or about April 13, 1967, tendered to the third-party defendant Local 814 Welfare Fund welfare contributions for the period July 16, 1966, to July 31, 1966, for and on behalf of plaintiff, but the third-party defendant refused to accept said welfare contributions.

■ Under 50 U.S.C. App. § 459(g) (4) an employee of a private employer must, upon request of the employee,

"be granted a leave of absence by his employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon his release from a period of such active duty for training or inactive duty training, . . . such employee shall be permitted to return to his position with such seniority, status, pay, and vacation as he would have had if he had not been absent for such purposes. . . ."

It is important to distinguish the National Guard Reservist granted a leave of absence under § 459(g)(4) from the *inductee* who, under § 459(b)(B), shall be restored to his prior position of employment "or to a position of like seniority, status, and pay" and who also, under § 459(c),

"shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such

position without cause within one year after such restoration." [1]

The National Guard Reservist who is granted a leave of absence under § 459 (g)(4) also must be distinguished from the National Guard Reservist "who is ordered to an initial period of active duty for training of not less than three consecutive months" under § 459(g)(3) since the latter is "entitled to all reemployment rights and benefits" provided for inductees with certain exceptions not material hereto, while no such entitlement is granted the reservist under § 459(g)(4). Thus, it seems clear that while plaintiff herein must be permitted to return to his position with such seniority, status, pay and vacation as he would have had had he not been absent, he is not entitled under § 459 to participate in insurance or other benefits offered by the employer *unless* he is entitled in his own right to such insurance or other benefits rather than by way of statutory mandate.

■ Accordingly, it must be determined whether the particular benefits involved herein furnished by the Local 814 Welfare Fund come within the ambit of "seniority, status, pay, and vacation" under § 459(g)(4). Plaintiff relies principally on Accardi v. Pennsylvania R.R., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966), and Eagar v. Magma Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967), both of which cases involved the rights of returning inductees under §§ 459(b)(B) and –(c) and not returning reservists under § 459(g) (4). But even if we were to consider plaintiff as coming within the provisions of §§ 459(b)(B) and –(c)—and no such assertion is made—*Accardi* and *Eagar* are clearly distinguishable.

In *Accardi*, the employees were being laid off and were to be paid an amount to be computed on the total number of years of compensated service. Under the defendant railroad's system, an em-

ployee with as few as seven select days of work during a year could credit that year as one of compensated service. No distinction was made between a man who worked one day a month for seven months and one who worked for 365 days. It was obvious that the severance benefits did not in fact depend upon compensated service, but rather, upon seniority. Under the facts of that case, time spent in the military was held to be a "seniority" benefit and credited as compensated service when figuring the severance pay.

In *Eagar*, in a one-sentence per curiam opinion citing *Accardi,* the Supreme Court reversed the Ninth Circuit which had held that certain Magma employees were not entitled to recover holiday and vacation benefits. The collective bargaining agreement in effect granted paid vacations if an employee had worked 75% of his available shifts during the prior year and was employed by the company on his one-year anniversary date. Also to receive a paid holiday an employee must have worked the day before and the day after and must have been on the payroll continuously for three months prior to the holiday. Although Eagar had fulfilled the *work* requirements in both instances, i. e., he had worked 75% of his available shifts the year prior to entering the armed services and had worked the day before and the day after the claimed holiday after his return from military service, the Ninth Circuit denied him relief because he was not with the company on his one-year anniversary due to entering the military, and because he was not discharged in time to complete the three-month tenure requirement prior to the holiday. This Court is in agreement with the analysis of *Eagar* in Kasmeier v. Chicago, Rock Island & Pacific R. R., 437 F.2d 151 (10th Cir. 1971), where it stated:

"Central to the Circuit's rationale was the thought that the claimed benefits were not perquisites of seniority

---

1. It is significant that § 459(g)(4) refers to an employee "who *holds a position described in* paragraph (A) or (B) of subsection (b) of this section" whereas § 459 (c)(1) and (2) refer to a person "who *is restored to a position in accordance with* the provisions of paragraph (A) or (B) of subsection (b)." (Emphasis added.)

and resultingly could be legitimately denied under the 'other benefits' clause. Although the Supreme Court did not elaborate on the Circuit opinion, it appears to us that the error was in classifying the subject vacation and holiday benefits as 'other benefits' when with the mere passage of time both rights would have automatically accrued to the employee.

"Regarding the vacation and holiday benefits, the work requirements were fulfilled and all that was left in order to qualify was tenure—the passage of time. . . .

"*The Supreme Court does not hold in either Accardi or Eagar that a right or benefit, which would accrue only by rendering a specified number of compensated work days, must be considered a perquisite of seniority. Indeed, by negative implication, a benefit which does not accrue automatically with tenure is not within the scope of 'seniority' as used in the Act.*" (Emphasis added.) *Id.* at 154–155.

Although this Court recognizes that *Kasmeier's* construction of *Eagar* does not necessarily correspond with that of certain of the other Circuits—*see* Locaynia v. American Airlines Inc., 457 F.2d 1253 (9th Cir. 1972)—the instant case is clearly distinguishable from *Accardi* and *Eagar* on its facts. *Accardi, Eagar* and their progeny involved the question of whether vacation, holiday or severance pay constituted a perquisite of seniority under §§ 459(b)(B) and -(c)(1) or was within the ambit of the "other benefits" clause of subdivision -(c)(1). In the instant case we are dealing with certain "welfare benefits" to which the employee is entitled provided he has worked a specified number of hours in the qualifying period. The level of benefits is the same for all employees irrespective of their length of service with defendant, so that the factor of seniority plays no part in determining the welfare benefits to be received by an employee. There is not an iota of evidence in this proceeding that

defendant made welfare contributions for any of its employees who were on leave of absence or furlough. Here we have a collective bargaining agreement which required only that defendant Trucking make certain contributions to third-party defendant Local 814 Welfare Fund for every hour of work for which an employee, including plaintiff, was paid. In consideration of these payments the employees so paid were entitled to benefits furnished by the third-party defendant Local 814 Welfare Fund in accordance with the latter's rules and regulations. On the basis of those rules and regulations any employee became eligible for benefits on the first day of the third month following the month in which such employee worked 72 or more hours, and the insurance was to terminate on the last day of the second calendar month following the month in which the employee worked less than 72 hours. Plaintiff had not worked for defendant Trucking for 72 hours in July 1966 for which he was paid, and third-party defendant Local 814 Welfare Fund apparently determined that plaintiff's coverage had lapsed as of September 30, 1966, and that he would not again be eligible for benefits until November 1, 1966, assuming he had worked 72 hours for which he was paid in August 1966. It hardly can be maintained that plaintiff should be paid for days he did not work in July of 1966, although the payments to be made by defendant Trucking to third-party defendant Local 814 Welfare Fund are clearly based on and measured by hours of work for which the employee was paid.

"Insurance and other benefits" have been construed "to cover a fairly narrow group of economic advantages whose common quality [is] that they [are] miscellaneous fringe benefits not usually regarded as part of 'pay,' 'status,' or 'seniority.' " Borges v. Art Steel Co., 246 F.2d 735, 738 (2d Cir. 1957). Such insurance and other benefits can be conditioned by provisions of a collective bargaining agreement where such conditions do not penalize a veteran vis-a-

vis other employees. To hold otherwise would be to discriminate in favor of veterans rather than to maintain the status quo. Siaskiewicz v. General Electric Co., 166 F.2d 463, 465–466 (2d Cir. 1948). Furthermore, as this Court has already inferred, it is at least doubtful whether a National Guard Reservist has any rights with respect to "insurance and other benefits" except as they may be granted by the collective bargaining agreement, whether or not such agreement discriminates against him with respect to such insurance and other benefits.

Accordingly, I find that defendant Trucking did not violate 50 U.S.C. App. § 459(g)(4) by its refusal to make payments for the hours which plaintiff did not work or for which he was not paid in July of 1966 by reason of his military service, and, further, that plaintiff was not entitled to the benefits sued for herein. There is, therefore, no need to consider the action over against Local 814 Welfare Fund.

This opinion will serve as findings of fact and conclusions of law under Fed. R.Civ.P. 52(a). Judgment will be entered in favor of defendant Trucking and third-party defendant Local 814 Welfare Fund in conformity herewith.

So ordered.