**Carmine PALMAROZZO, Plaintiff-Appellee,**

v.

**COCA-COLA BOTTLING COMPANY OF NEW YORK, INC., Defendant-Appellant.**

**No. 21, Docket 73–1287.**

United States Court of Appeals, Second Circuit.

Submitted Oct. 10, 1973.

Decided Dec. 18, 1973.

Paul J. Curran, U. S. Atty., S.D.N.Y., and Joseph D. Danas, Asst. U. S. Atty., on the brief, for plaintiff-appellee.

Stanley Israel, Leon L. Sacks, and Bluestone, Kliegman & Israel, New York City, on the brief, for defendant-appellant.

Before FRIENDLY, ANDERSON and MULLIGAN, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

Carmine Palmarozzo worked as a permanent employee of the Coca-Cola Bottling Company of New York from June 4, 1962 until September 21, 1962. He then served six months in the Armed Forces and returned to work for Coca-Cola from March 23, 1963 until June 22, 1967, at which time he voluntarily left the company. Coca-Cola employees qualified for severance pay after accumulating five years of service credits, but Palmarozzo was denied severance pay because the company refused to include in its calculation of his service credits the time which he spent in the military. Palmarozzo brought this suit in the Southern District of New York to collect $200 severance pay and to force Coca-Cola to contribute toward his severance pay for the period he spent in the service. He charged that the company, by refusing so to contribute, violated his right as a veteran to be restored in employment with no loss of seniority under the Universal Military Training and Service Act, 50 U.S.C. App. §§ 459(b)(B) and (c). (June 24, 1948, c. 625 Title I, 62 Stat. 614, as amended).[1]

1. 50 U.S.C.App. § 459 [§ 8 of original Act] in pertinent part provides:

"(b) Reemployment rights

In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate and (2) makes application for reemployment within ninety days after he is relieved from

Pursuant to a contract with the International Teamsters, Coca-Cola added twenty cents to the Soft Drink Workers Local 812 Retirement Fund for each hour worked up to 40 hours a week. The Rules and Regulations of the Retirement Fund determined the availability of severance benefits, and Article III of those rules stated that if an employee severed employment after accumulating five or more service credits, he was entitled to severance pay.

An employee received ¼ of a service credit for every 400 hours actually worked during a year, but he could never acquire more than one credit per year, representing a total of 1600 hours. The hours actually worked, for purposes of calculating service credits, were determined by Coca-Cola's fund payments, which never exceeded compensation for 40 hours per week. Therefore, an employee received no service credit for overtime during the week or for work in excess of 1600 hours per year.

Employees who worked regularly could easily achieve one service credit each year, and their severance benefits increased with every five service credits —or approximately with every five years of continuous service.

Palmarozzo accumulated 4½ credits during his employment. The District Court found the Act required Coca-Cola to presume for purposes of calculating severance pay that Palmarozzo had been continuously employed while he was in the service, and the court ordered the employer to contribute to the fund for such time.[2] The District Court held the case was governed by Accardi v. Penn. Ry. Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966), and both parties on appeal agree.

In *Accardi,* the Supreme Court analyzed a "compensated service" plan, similar to the "service credit" plan in this case, and held that denial of credit for time served in the armed forces violated the veteran's right not to lose seniority.

such training and service or from hospitalization continuing after discharge for a period of not more than one year—

     \*     \*     \*     \*     \*

(B) If such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

(c) Service considered as furlough or leave of absence

(1) Any person who is restored to a position in accordance with the provision of paragraph . . . (B) of subsection (b) (of this section) shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph . . . (B) of subsection (b) (of this section) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration of such employment.

(3) Any person who holds a position described in paragraph . . . (B) of subsection (b) (of this section) shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the Armed Forces of the United States.

2. The lower court opinion was not published.

The Court ordered the Pennsylvania Railroad to base firemen's severance benefits on length of actual service including time spent in fulfilling military obligations. The Court stated:

"The requirements of the 1940 Act are not satisfied by giving returning veterans seniority in some general abstract sense and then denying them the perquisites and benefits that flow from it. We think it clear that the amount of these allowances is just as much a perquisite of seniority as the more traditional benefits such as work preference and order of lay-off and recall. We hold that the failure to credit petitioners' 'compensated service' time with the period spent in the armed forces does not accord petitioners the right to be reinstated 'without loss of seniority' guaranteed by § 8(b)(B) and (c)." 383 U.S. at 230–231, 86 S.Ct. at 772.

AppellantCoca-Cola seeks to limit *Accardi* to severance plans which are based primarily on terms of years with a company rather than work time. Appellant states the "compensated service" plan in *Accardi* was a sham, because credit could be given for any year in which a fireman had worked only one day per month for seven months. Coca-Cola contends the Supreme Court held the plan violated the Act because of the "bizarre result" that a man who only worked seven days a year was preferred over the veteran who worked six full months but could not complete the year due to his military service.

But *Accardi* is not so limited. The "bizarre results" in that case illustrated that the compensated service benefits, despite pretentions to being equated to working time, were actually proportionate to length of service. Similarly, Coca-Cola's plan gave one credit for each year of continuous service, based benefits on five-year plateaus of accumulated credits, and allowed no credit for overtime or work in excess of 1600 hours per year. In both *Accardi* and the present case, length of continuous service, rather than the nature of that service, produced the benefits.

Coca-Cola contends that its service credit plan was sufficiently related to the amount of time actually worked that the benefits were in the nature of compensation, as opposed to a seniority benefit. The Act only requires that the veteran not lose seniority; and the employer is under no obligation to compensate him for time spent in the armed forces. This argument was presented in *Accardi*, and the Supreme Court disposed of it as follows:

"  .  .  . the *real nature* of these payments was compensation for loss of jobs. And the cost to an employee of losing his job is not measured by how much work he did in the past—*no matter how calculated*—but by the rights and benefits he forfeits by giving up his job. Among employees who worked at the same jobs in the same craft and class the number and value of the rights and benefits increase in proportion to the amount of seniority, and it is only natural that those with the most seniority should receive the highest allowances since they were giving up more rights and benefits than those with less seniority." 383 U.S. at 230, 86 S.Ct. at 772. (Emphasis added.)

The Supreme Court, therefore, recognized that the "real nature" of severance benefits which accrue with years of service was not compensation no matter how the benefits were calculated, but rather was payment for loss of seniority rights acquired over years of employment. The Court perceived that it would be inconsistent to protect seniority rights without guaranteeing the veteran that payment for loss of those rights was also protected. Such severance benefits have become a major form of security from lay-offs and new technologies for employees in mass production industries. Max S. Wortman, Jr., George C. Witterfeld, Labor Relations and Collective Bargaining, (1969), 228, 256. To these employees, the benefits

represent an offset against losses of preference in lay-offs, automatic wage increases and promotion possibilities. Bradley v. General Motors Corporation, 283 F.Supp. 481, 482 (E.D.Mo.1968). The Act protects the veteran from loss of all these seniority preferences .and rights, and as the Court held in *Accardi* the Act also guarantees that those rights, as accumulated by the veteran and expressed in severance benefits, will have the same value to him as they would have to someone who was not absent because of military service to the country.[3]

The seniority status of the employee in military service has been analogized to that of a person riding an escalator; although not actually continuing his civilian employment, he rises to the same seniority level he would have reached because he stays on the step he occupied when he was employed. Fishgold v. Sullivan Drydock Corp., 328 U.S. 275, 66 S. Ct. 1105, 90 L.Ed. 1230 (1946). In relationship to employee seniority and severance pay, one court has stated:

> "The 'escalator principle' can mean only this: the escalator had steps both up (continued employment and possible promotion), and out (discharge in exchange for severance pay) . . . [I]t was impermissible . . . to restructure it so as to leave him the steps up, and remove those leading out." Taylor v. So. Pac. Co., 308 F.Supp. 606, 610 (N.D. Cal.1969).

Coca-Cola's contention that the service credit plan is compensatory, or produces benefits which are not perquisites of seniority, is an attempt to remove these severance payments from the seniority escalator because, under the rules and regulations of the fund, they do not flow automatically from length of employment.

Coca-Cola asks that this court examine the plan in the same manner as the Supreme Court looked for "bizarre results" in the compensated service plan in *Accardi*. If the benefits are not proportionate to hours actually worked, Coca-Cola concedes the plan is a sham, but if the benefits are proportionate, Coca-Cola asks the court to declare that the plan is a legitimate work requirement and not related to seniority, and, thus, not in violation of the Act. Seattle Star v. Randolph, 168 F.2d 274 (9 Cir. 1948).

This would be the same approach this circuit took in Siaskiewicz v. General Electric Co., 166 F.2d 463 (2 Cir. 1948). General Electric denied veterans vacations because the employment contract required the employees actually to work six months during the preceding year to qualify for vacation time. The court held this practice did not violate the Act, as the benefits were contingent on actual work requirements, not seniority, even though the employees would have worked the previous year but for their military service. After *Accardi* and the Supreme Court's subsequent per curiam holding in Eagar v. Magma Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967), to the effect that a similar denial of vacations was illegal under the Act, the validity of the work requirements test in *Siaskiewicz* has been severely challenged. Ewert v. Wrought

---

3. Such a guarantee does not create a *per se* rule applying to any and all compensation termed "severance pay" or to any and all payments upon termination of service. *Accardi* demands that courts look through "false labels", whether "service credit" or "severance pay", and determine if the benefits primarily relate to length of service. 383 U.S. at 230, 86 S.Ct. 768, 15 L.Ed.2d 717.

Consequently, any lump sum payment which does not increase in size with length of employment—regardless of whether it is labeled a "severance benefit"—is not a perquisite of seniority within the meaning of § 459(b) and (c). Such payments might aid an employee to find a new job or acquire new skills, and if the increment or the existence of the payments does not depend on years of service, the Act does not protect them for the veteran. At the same time, if the severance benefits do increase with length of continuous employment, the real nature of the payments is compensation for forfeited seniority rights. 383 U.S. at 230, 86 S.Ct. 768, 15 L.Ed.2d 717.

Washer Mfg. Co., 477 F.2d 128 (7 Cir. 1973); Locaynia v. American Airlines, Inc., 457 F.2d 1253 (9 Cir. 1972), cert. den. 409 U.S. 982, 93 S.Ct. 317, 34 L. Ed.2d 246 (1973); *but see* Kasmeier v. Chic., Rock Is. & Pac. R. Co., 437 F.2d 151 (10 Cir. 1971).

Nonetheless, commentators have asked that courts not interpret *Accardi* as a flat rule for all severance benefits which increase with length of employment, but rather utilize the "sham" or work requirements analysis as each severance plan is reviewed. Thomas R. Haggard, Veteran's Reemployment Rights and the "Escalator Principle", 51 B.U.L.Rev. 539 (1971). Some courts have followed this approach. Hoffman v. Bethlehem Steel Corp., 477 F.2d 860 (3 Cir. 1973).[4]

Yet such a case-by-case review of the various calculations of severance benefits based upon period of employment, already held in *Accardi* to be perquisites of seniority, would give no firm assurance to veteran employees that they are protected, would cause unnecessary confusion as to what is a legitimate work requirement, and would ultimately defeat the purpose of the Act by delegating to private parties the public trust established for the veteran.

Employees should be able to rely on receiving severance pay based on seniority, including time served in the military forces. This expectation should not turn on whether severance benefits are calculated in the union contract according to hours actually worked or length of service, because the "real nature" of the benefit is payment for loss of accumulated seniority rights, which are determined on the basis of length of service including military service. The Supreme Court has stated that for purposes of calculating seniority rights, a man in the military is presumed to be "continuously employed," regardless of any possibilities of sickness, lay-off, and other economic uncertainties. Brooks v. Missouri Pac. R. Co., 376 U.S. 182, 84 S.Ct. 578, 11 L.Ed.2d 599 (1964). The employee-plaintiffs in *Accardi* expected that seniority for purposes of calculating rights was the same as seniority for the purpose of calculating the value of those rights; they did not know they were parties to a "sham" compensated service plan, and it seems very doubtful that any of them actually received credit for working seven days out of a year. 80 Harv.L. Rev. 142, at 149 (1966). Similarly, veterans under the Coca-Cola plan could not have foreseen whether this plan was a sham or not, but they knew that their seniority rights as defined by the Act automatically included time spent in the military and should have had the assurance that severance pay, as the measure of those rights, was based on the same period of time.[5]

---

4. Even if Coca-Cola's "service credit" plan were analyzed as it requests, the plan could not be considered a legitimate work requirement. The denial of any credit for overtime and the failure of the company to credit· any hours in excess of 1600 per year show that this is a plan rewarding a continuous relationship with the company, rather than giving compensation for work actually performed. Also, the exact correlation between service credits and years of continuous employment as well as the increase in benefits with every five credits, or every five years, emphasize that the purported work requirements are just a crude means of measuring rewards for longevity.

5. Employee reliance on the protected value of seniority rights will be weakened if courts apply a work requirements test to each con-

tract. Hoffman v. Bethlehem Steel Corporation, 335 F.Supp. 968 (W.D.Pa.1972), is an example of the danger to employee expectations inherent in this approach. In its appeals brief Coca-Cola referred to this lower court opinion as "squarely on point." Hoffman, a veteran, sought credit for military time under a Supplemental Unemployment Benefits Plan (SUB), which awarded ½ credit for every 40 hours actually worked. SUB benefits were based on the number of SUB credits received. The lower court held that this was a legitimate work requirement and denied the veteran recovery. After Coca-Cola had submitted its brief on appeal, the Third Circuit reversed the lower court because 40-hour weeks were defined by the contract as any week in which an employee worked one hour; the Court of Appeals held the SUB plan was, therefore, a sham and

Since the passage of the Act, veterans have had to turn to the Supreme Court for definition of rights of seniority. Fishgold, supra, Oakley v. Louisville & N. R. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed.2d 87 (1949); Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749 (1955), Tilton v. Missouri P. R. Co., 376 U.S. 169, 84 S.Ct. 595, 11 L. Ed.2d 590 (1964). While contracts between employers and employees have been consulted by the Court to define "seniority" in general terms, the rule for interpreting individual contracts once a benefit has been determined to be a perquisite of seniority has always been:

> "The legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need . . .
> And no practice of employers or agreements between employers and unions can cut down the service adjusted benefits which Congress has secured the veteran under the Act." *Fishgold,* 328 U.S. at 285, 66 S.Ct. at 1111.

If a benefit is a perquisite of seniority, the purpose of the Act—to establish and protect the seniority rights of veterans—is defeated if lower courts allow collective bargaining agreements to redefine a benefit simply by making it contingent on work time rather than seniority.

The Act was premised on the recognition that the man in the military is not represented at the bargaining table and that any special status accorded veterans is an inconvenience to union and management alike. Veterans' Reemployment Rights Under Selective Service Interpretations, 54 Yale L.J. 417 (1945). To say that severance benefits accruing with years of service are protected under the Act as perquisites of seniority as the Court said in *Accardi* and then to make those rights contingent on the extent to

which the union contract incorporates work requirements as a condition for receipt of benefits would render the Act entirely nugatory.

This is because any perquisite of seniority can be based upon actual work hours, rather than length of employment. "Seniority provisions give rise to more problems in their application than most other provisions of the contract" in large part because arbitrators are not in agreement as to whether seniority means length of continuous service or actual working presence. Russell A. Smith, Leroy S. Merrifield, Donald P. Rothschild, Collective Bargaining and Labor Arbitration (1970) 421. To incorporate this confusion into the Act would greatly endanger the security guaranteed the veteran.

Similar attempts by unions and employers to make wage advances contingent on actual work time rather than length of service, have been voided as illegal under the Act. Blair v. Page Aircraft Maintenance, Inc., 336 F.Supp. 1011 (M.D.Ala.1971), reversed on other grounds, 467 F.2d 815 (5 Cir. 1972); Moe v. Eastern Air Lines, 246 F.2d 215 (5 Cir. 1957). There is no reason to suppose that promotion or lay-off preferences could be contingent on work requirements, rather than length of service, without violating the Act. The same considerations of fairness to the employed veteran which invalidate attempts to remove wages or lay-offs from the traditional seniority framework also prevent work requirements from providing justification for not crediting veterans' military time toward the qualifying employment period for severance pay.

Work requirements could be a justification for not according the veteran deferred compensation or profit-sharing which he might have received if he had not been in the military. Similarly, work requirements could be relevant in deciding whether pension rights are re-

granted the veteran recovery. Hoffman v. Bethlehem Steel Corp., 477 F.2d 860 (3 Cir. 1973). Retreating from its contention that

the case is "on point", appellant now asks the court to just follow the analysis pursued by the Third Circuit.

lated to seniority or whether a certain skill has been learned, Tilton v. Missouri & Pac. R. Co., *supra,* but none of these circumstances is presented here.[6] The veteran has a right to be credited with time spent in the service of his country.

Such a right does not favor the veteran over the nonveteran or grant him any superseniority. *Fishgold, supra.* Rather, the right expresses the real nature of severance pay which is based essentially on employment for a particular period of time as inherently a part of seniority and guarantees equal competitive status.

■ Coca-Cola has also asked this court to rule that the severance benefits are "other benefits" within the meaning of § 8(c) of the original Act, § 459(c), and, therefore, the veteran is only entitled to be treated as if he were on furlough or leave. This request ignores the holding in *Accardi* that the real nature of these severance benefits is payment in lieu of lost rights accumulated through seniority and also overlooks the disposal of the same statutory argument for the compensated service plan. This circuit had held in Accardi v. Penn. R. Co., 341 F.2d 72 (2 Cir. 1965), that severance benefits were "other benefits" and not subject to the escalator principle, but the Supreme Court reversed and said, "Without attempting in this case to determine the exact scope of this provision of § 8(c) it is enough to say that we consider that it was intended to add certain protections to the veteran and not to take away those which are granted him by § 8(b)(B) and the other clauses of § 8(c)." 383 U.S. at 232, 86 S.Ct. at 773. Under this reasoning, the "other benefits clause must be viewed as a separate addition to the seniority provisions of the Act and can no longer be used as a basis for defining and limiting

the perquisites of seniority. 80 Harv.L. Rev. 142, at 148 (1966).

The judgment of the court below is affirmed.

FRIENDLY, Circuit Judge (dissenting):

Agreeing that this case is governed by the principles set out in Accardi v. Pennsylvania Railroad Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966), I dissent from the conclusion that *Accardi* requires us to hold that the severance benefit here at issue is a perquisite of seniority. If it is not that but rather one of the "other benefits offered by the employer relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces," Palmarozzo must lose, since it is agreed that time on furlough or leave of absence did not qualify for the severance payments.

The union and the railroad in *Accardi* had negotiated the severance payments to cushion the blow of a severe cutback in employment. Under the arrangement, any fireman with less than 20 years seniority was discharged, while those with 20 years or more were given the option of staying on. Those discharged or opting to quit were awarded severance pay, based upon the amount of "compensated service" they had accumulated with the railroad. The Court noted that the "compensated service" scheme was rather "bizarre," 383 U.S. at 230, 86 S.Ct. 768, 15 L.Ed.2d 717, in that the requirement for a "year" of compensated service could be met by working one day a month for seven months; this was consistent with the plan's obvious objective to distinguish betweeen old and new firemen. It was thus the details of the plan that led the Court to decide that the allowances were actually based on

6. Whether the Act protects pension rights or deferred compensation plans is not decided here, and no position on the issue is intimated. See 80 Harv.L.Rev. 142, at 149 (1966). When such benefits are analyzed, the extent to which the payments compensate for work

performed, rather than for loss of seniority rights, will determine the real nature of the benefits within the meaning of the Act, and in this respect, correlation between the amount received and actual work requirements may be relevant.

seniority, not on the total amount of service rendered by the employee. The Court made clear that only because of its determination that the severance pay scheme in *Accardi* was "based primarily on the employees' length of service with the railroad" did it hold the Act applicable. *Accardi* thus requires a close inquiry into whether the benefits in each case are based primarily on the employee's length of service or on the actual total service rendered by the employee; the case-by-case review disdained by the majority is precisely what is required by the statute as construed by the Supreme Court. If Congress had meant that employees entering military service should be treated in all respects on their return precisely as if they had been working all along, its language was singularly inept to express this.

Coca-Cola paid into the union fund 20 cents for every hour worked by each employee. Out of this fund, the union provided employees with several benefits, including pension, death and severance payments. As the majority notes, the union plan premised severance benefits on the number of hours worked per year, awarding one quarter unit of credit for each 400 hours worked up to 1600 hours. Five credits were required to earn a minimum of $200 in severance pay, the amount that Palmarozzo claims is due him here. It is true that this

scheme tended to give greater rewards to those who left the job with greater seniority. However, seniority and total compensated work naturally tend to correlate fairly highly. Even a scheme that scaled severance payments according to the precise number of hours worked would incidentally give greater rewards to employees with higher seniority since they would normally have accumulated more credits. The crucial point is that the scheme in this case is gauged, albeit not with precise exactitude, by the amount of work done, not by the length of service with the company. The plan thus does not constitute a manifestation of seniority sufficient to bring it within § 9(b) of the Act, 50 U. S.C. App. § 459(b)(B)(i). I would not require that Palmarozzo be credited for work he did not perform.[1]

The cases cited by the majority do not support its position that the severance benefit in this case is a perquisite of seniority. The most closely analogous recent case, Hoffman v. Bethlehem Steel Corp., 477 F.2d 860 (3 Cir. 1973), cuts quite the other way. The Third Circuit noted, 477 F.2d at 863:

The trial court has properly observed there is a distinction between rights which accrue with the passage of time and those for which some further act is required. Those which accrue with the passage of time are sen-

---

[1]. The operation of the severance pay plan poses further difficulties to the majority's conclusion which it appears to overlook. Unlike *Accardi*, this case involves a payment made by the union, not the employer. The collective bargaining agreement binds the employer only to pay 20 cents per hour up to 40 hours per week into the union Retirement Fund. The Fund, wholly a union plan, then provides severance payments out of the income from the employer's contributions. While I agree that employers generally should not be permitted to subvert the statute by delegating all fringe benefit payments to the union, this case presents some troubling problems in this regard. The employer's only duty under the statute is to restore the employee to a position of "like seniority, status, and pay." If the collective bargaining agreement had fixed employees' wages at a rate 20 cents per hour higher than here,

and the union had increased its dues by the same amount, putting the extra 20 cents into the Retirement Fund, I would not anticipate that the employer would be liable for any deprivation of seniority benefits for returning veterans. The case here does not seem significantly different. The employer's payments into the Fund are clearly based on work actually done, not on seniority, and under the circumstances of this case, he should not be required either to make payments into the fund for hours the employee did not work, or to make payments that the employee claims are due him out of the union's own fund. However, since I conclude that neither the employer's payments nor the union's benefit plan are based on seniority, I do not find it necessary to reach the difficult question of when § 9(b) applies to union obligations stemming from or related to a collective bargaining agreement.

iority rights which are protected under § 9(b). Those for which some other act is required, such as days of work, are not seniority rights protected by § 9(b) and would not accrue after the veteran returns.

Although the *Hoffman* court found that the unemployment benefit plan in question was almost as "bizarre" as that in *Accardi* and thus held that the benefits in that case were based on seniority, the court's distinction between rights that accrue with the passage of time and those predicated on some further act by the employee would lead to a reversal here. Most of the courts that have applied § 9(b) have employed an analysis similar to that used in *Hoffman*.

It is true that in a per curiam decision in Eagar v. Magma Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967), a divided Court awarded an employee vacation and holiday rights even though, because of military duty, he was not technically employed at the times required for eligibility under the company's rules. In *Eagar*, however, the veteran who had met the work requirements would have been eligible for the benefits if he had simply been on the company's payroll at the relevant times whether he had been working or not. Since *Accardi* had held that the absent employee must be treated as if he had kept his job continuously throughout the period of his military service, it made sense to hold that Eagar should not be denied a right contingent merely on technical employment throughout the relevant period. In "paid vacation" cases subsequent to *Eagar*, the courts have generally scrutinized vacation eligibility plans to determine whether they turned on seniority or work actually done. Both the Fifth Circuit in Dugger v. Missouri Pacific Railroad Co., 403 F.2d 719 (5 Cir. 1968), aff'g 276 F.Supp. 496 (S.D.Tex.1967), cert. denied, 395 U.S. 907, 89 S.Ct. 1752, 23 L.Ed.2d 222 (1969), and the Tenth in Kasmeier v. Chicago, Rock Island & Pacific Railroad Co., 437 F.2d 151 (10 Cir. 1971), have held vacation benefits not to be perquisites of seniority where the employees had to satisfy a substantial work requirement before becoming eligible for the benefits. Upholding a 110-day work requirement as a prerequisite to vacation benefits, the *Kasmeier* court wrote, "Whereas in *Accardi* the compensated service requirement was a mere label to obscure the real nature of the payments, in this controversy the 110-day requirement is not a mere facade to veil the true nature of the benefits; it is a legitimate, uniformly applied condition precedent to vacation benefits." 437 F.2d at 154. In Ewart v. Wrought Washer Mfg. Co., 477 F.2d 128, 129 (7 Cir. 1973), the Seventh Circuit upheld a veteran's vacation claim, but suggested that a different result might follow if the vacation rights were "purely additional compensation for services actually rendered." Similarly, in Hollman v. Pratt & Whitney Aircraft, 435 F.2d 983, 988–989 (5 Cir. 1970), the court made it clear that vacation rights would be granted to veterans only if "they would automatically accrue . . . but for induction." See also Tuttle v. U. S. Plywood Corp., 293 F.Supp. 401 (D.Or. 1968); Connett v. Automatic Electric Co., 323 F.Supp. 1373 (N.D.Ill.1971); Fees v. Bethlehem Steel Corp., 335 F. Supp. 487 (W.D.Pa.1971).[2]

In any event, the "paid vacation" cases are distinguishable from the case at

---

2. The Eighth Circuit, in Morton v. Gulf, Mobile & Ohio Railroad Co., 405 F.2d 415 (8 Cir. 1969), and the Sixth Circuit in Edwards v. Clinchfield Railroad Co., 408 F.2d 5 (6 Cir. 1969), aff'g 278 F.Supp. 751 (E.D. Tenn.1967), appear to be to the contrary. See also Saleck v. Great Northern Ry., 277 F.Supp. 936 (D.Minn.1967); Barry v. Smith, 285 F.Supp. 801 (D.Mass.1968); cf. Messina v. Consolidated Freightways Corp., 315 F. Supp. 340 (W.D.N.Y.1970).

The majority cites the Ninth Circuit's brief opinion in Locaynia v. American Airlines, Inc., 457 F.2d 1253 (9 Cir.), cert. denied, 409 U.S. 982, 93 S.Ct. 317, 34 L.Ed.2d 246 (1972), as undercutting the work requirements test for vacation benefits. I do not read that opinion so broadly. The vacation plan at issue in *Locaynia* premised eligibility on periods of "continuous service" with the company, much like the plan in *Eagar*. The court directed its attention to the "narrow

bar. In virtually all of those cases, the "work requirement" prerequisite to being granted vacation rights was expressed in terms of a minimum number of days on the job.[3] Such a requirement is close to the requirement, as in *Eagar,* that the employees be "on the payroll" for a specified period prior to the vacation or holiday in order to be entitled to paid time off. In this case, however, the work requirement amounted to much more than a requirement that the employee be technically on the payroll. The entire operation of the compensation plan depended upon a rough equivalence between the employer's contribution for employee hours worked and the credits earned by the employee for working those hours. The work requirement was no sham; on the contrary, it was central to the operation of the severance benefit scheme.

In analyzing employee benefits of other kinds, courts have uniformly inquired whether the benefits are awarded merely for tenure, or are intended as compensation for acquired expertise or work actually performed. It is only when an employer has provided automatic promotions or pay increases to his employees on the basis of length of service rather than work that the courts have held the employer must restore the veteran at a pay or job level that he would have attained if he had continued in the company's employment during the period of his military service. Hatton v. Tabard Press Corp., 406 F.2d 593 (2 Cir. 1969); Power v. Northern Illinois Gas Co., 388 F.2d 427 (7 Cir. 1968); Wienberg v. United States, 425 F.2d 1244 (Ct.Cl. 1970); Wood v. Southern Pac. Co., 447 F.2d 486 (9 Cir. 1971). Courts have used the same analysis for absence allowance credits, Bradley v. General Motors Corp., 283 F.Supp. 481 (E.D.Mo. 1968); pension eligibility, Litwicki v. PPG Indus., 84 L.R.R.M. 2538 W.L.Pa. Sept. 19, 1973); and general welfare benefits, Gentile v. United States Trucking Corp., 355 F.Supp. 960 (S.D.N.Y. 1973). See Haggard, Veterans' Reemployment Rights and the "Escalator Principle," 51 B.U.L.Rev. 571 (1971). The decision here seems counter to the strong current of authority.

Finally, the majority relies on the "escalator" metaphor, which has been employed extensively in construing the "seniority, status and pay" language of § 9(b). This principle is that if the passage of time would automatically have elevated the employee to a higher level, the veteran is entitled to assume that level upon his return; in Mr. Justice Douglas' language, the veteran "does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284–285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). But when the employer or the union in good faith conditions benefits on performance rather than mere tenure, it is not required to place the veteran in a position he could only have obtained through his own work as an employee. The escalator metaphor does not fit such cases; rather the employer should not be required to put the veteran in a position he could have obtained only by climbing up the stairs.

I would reverse the judgment of the district court and direct it to dismiss the complaint.

issue" of whether "*this* vacation pay [was] a perquisite of seniority." 457 F.2d at 1255 (emphasis added). Nothing in the opinion indicates that the court would hold that a veteran was entitled to vacation pay if the plan in question contained a *bona fide* work requirement. A district court in the same circuit has recently read *Locaynia* as limited to vacation plans not including a work requirement. Young v. Southern Pacific Trans. Co., 84 L.R.R.M. 2546 (C.D.Cal. Sept. 19, 1973).

3. The only post-*Eagar* "paid vaction" case I have been able to find in which there was a work requirement expressed in total number of hours of compensated service is Tuttle v. U. S. Plywood Corp., supra, 293 F.Supp. 401. The court there held that the work requirement took the vacation benefit out of the scope of § 9(b).